WHITING, Cashier, v. THE WESTERN STAGE COMPANY.

1. **Agent:** GENERAL POWER: NEGOTIABLE PAPER. A general authority to transact business, will not be held to confer the power upon an agent to make the principal a party to negotiable paper. And a power to do some things in regard to such paper, cannot be enlarged by construction to do other somewhat similar things.

2. —— METHOD OF CONFERRING AUTHORITY. There is no special mode of conferring authority to make, indorse, renew or accept negotiable paper; it may be given by parol as well as by writing, and may be inferred from the course of business or employment, and from the fact that similar transactions have been repeatedly recognized by the principal as done by his authority.

—— The general rule is, that the principal is liable if he has authorized the act, or if he has authorized those with whom the agent dealt in his behalf, to believe, as fair and reasonable men, that the authority had actually been given.

3. —— RATIFICATION. Generally the ratification of an act of an agent has the same effect as a previous authority.

4. —— APPLICATION. The principle above stated applied to the evidence disclosed in the record of this case.

5. —— AUTHORITY PRESUMED TO CONTINUE. Whether the authority of an agent be general or special and unlimited as to time, the presumption as to those previously dealing with him is, that it continued until notice of revocation.

6. Promissory note: SECURITY AND EXTENSION. The taking of security from, or an extension of time to, an indorsee of a promissory note does not discharge the principal.

*Appeal from Henry District Court.*

WEDNESDAY, JUNE 20.

THE facts of this case, as found by the court below, are as follows: From 1857 to July 1, 1861, A. C. Parks was the general agent of the defendant at Mt. Pleasant, and along the line of travel to Eddyville, with general authority to do whatever was necessary to enable defendant to operate its line of stages, including the power to raise money, for the use and benefit of the defendant, on its notes, signed with its name by said Parks as agent, by getting such notes discounted at the Mt. Pleasant Branch of the State Bank· of Iowa, and· by other persons. At sundry times, during this period, he raised money by discount at said bank, and from other persons.

The bank discounted a note for $500 in November, 1858; one for the same amount in July, and two for $1,000 each December 12, 1859; all for the benefit and with the authority of defendant; all the money passing through the hands of Parks as agent aforesaid.

These notes were not paid at maturity, and were renewed from time to time for any unpaid balance, Parks acting as agent in making such renewals. The note sued on (for $700, dated August 2d, 1861, and due in ninety days), was given solely for the balance remaining unpaid on said four

discounts. At this time none of the officers of the bank had any knowledge or notice that Parks had ceased to act as agent for defendant. The note was signed "Western Stage Company, per A. C. Parks, agent," payable to the order of James McLaren, and was indorsed by said McLaren, and also by Parks and one Tynen. It was duly protested for non-payment, and soon after maturity the bank notified defendant through the post-office, that the note was due and unpaid. Parks expressed a desire to pay the note himself, and offered to mortgage his homestead to secure the same; the offer was accepted, and the bank took such mortgage as additional security, but without releasing the maker. The mortgage is dated December 28, 1861, and is conditioned to pay said note one year thereafter. On these facts the court below found for plaintiff, and defendant appeals.

*Finch, Clark & Rice* for the appellant.

*T. S. Woolson* for the appellee.

WRIGHT, J. — In addition to the facts found by the court, it is proper to state that the testimony tended to show that Parks was insolvent in 1864; that he settled with defendant in September, 1861, and was found indebted in about $3,200, for which he gave security. Whether the debt to the bank was in this settlement treated as owing by Parks, or whether it was in any manner referred to, does not appear.

After the expiration of one year from the date of the mortgage, the bank permitted the note (at the request of Parks) to remain as before, being content to let it run if the interest was paid. Parks paid interest as follows:

September 5, 1863, $25; November 7, 1863, $115. The bank advised the company two or three times by letter, that the note was due and unpaid; but there is no evi-

dence that more than one of them were received, and that, after the death of Parks. Beyond this, it does not appear that the company knew of the renewal of the note; and there is nothing to show an *express* authority to renew or obtain an extension of the time.

The authority is implied from the agent's powers, and from certain conversation testified to by plaintiff between himself, as agent of the bank, and Colonel Hooker, one of the company and its general managing agent. There is no dispute as to the authority of Parks to make and procure the discount of the notes of December 12, 1859. The amount paid by Parks during the continuance of his agency, was collected from passengers, or by the disposal of property belonging to the company. The company settled with Parks each quarter, but the last settlement covered two quarters. There are other matters developed by the testimony, but as they do not seem to be material to the disposition of the case, they need not be here recited.

Giving all the facts their full weight, our opinion is, that they warranted the finding of the court below and that the judgment should not be disturbed. That this conclusion would be justified if the agency of Parks had continued to the time of making the note, it seems to us there can be no dispute. This, however, we shall proceed to show, and then consider what effect the prior termination of his agency, and the execution of the mortgage and his settlement with defendant, should have upon plaintiff's rights.

We recognize the rule that a general authority to transact business will not be held to confer the power to make **1. Agent: general power: negotiable paper.** the principal a party to negotiable paper. As also the further one, that when a power is given to do some things with regard to such paper, it cannot be enlarged by construction to do other though somewhat simi-

lar things. 1 Pars. N. & B., 106, 107; *Atwood* v. *Munnings*, 7 B. & C., 278; *Murray* v. *East India Company*, 5 B. & Ald., 204: *Gardner* v. *Baillie*, 6 T. R., 591; *Rosier* v. *Same*, 8 Wend., 494; Chitty on Bills, 31; Edw. B. & N., 86, 87. And it was held in a Kentucky case (*Ward* v. *Bank of Kentucky*, 7 Mon., 93), that the power to make notes for discount does not extend to the power of renewing the same notes. The facts found by the court below, and the conclusions of law based thereon, do not, however, conflict with any of these general rules, but are sustained by other and equally well settled general principles. There is in the law no specific mode of conferring author-

2. — method of conferring authority.

ity to make, indorse, renew or accept negotiable paper. It may be given by parol as well as by writing. So it may be inferred from the course of business or employment, and from the fact that similar transactions have been repeatedly recognized by the principal as done by his authority. The proof of such recognition, it may be admitted, must be such as makes the belief of such authority strong and reasonable. The general rule is, that the principal is bound, if he has actually authorized the act, or if he has authorized those with whom the agent dealt in his behalf, to believe, as fair and reasonable men, that the authority had actually been given. The ratification of the act has, in general, the same effect as a

3. — ratification.

previous authority. Upon this subject see *Prescott* v. *Flinn*, 9 Bing., 19; *Valentine* v. *Parker*, 5 Penn., 333; *Barber* v. *Gingell*, 3 Esp., 60; *Bigelow* v. *Denesin*, 23 Vt., 564; 1 Pars. N. & B., 100, 101; Edw., 88, 89; *St. John* v. *Redmond*, 9 Port. (Ala.), 428.

In view of these rules, let us turn to the facts of this case; and first it is important to bear in mind that all the

4. — application.

money used by the agent was used by him for the benefit of the principal; that is to say, there is nothing to show that it was used for his own purposes

or otherwise than in carrying on the business of the company.

Then, again, the court below found as a fact that his general authority included the power to raise money for the benefit of the defendant, by procuring the discount of notes at plaintiff's bank or by other persons, signed by him as agent. And this conclusion was fairly warranted by several considerations.

Thus, in addition to the notes discounted referred to in the facts found, it appears that the bank discounted another in March, 1859, for $1,000. Upon these notes something had been paid, and there had been several renewals prior to December, 1859, when the $2,000 loan was made. It is admitted that there was authority to discount these last notes, and the cashier (plaintiff) testifies that the general managing agent solicited the loan; that there was then a portion of the former notes unpaid, and he complained of this to such managing agent, and informed him that the board were dissatisfied with the way their notes were paid, and such agent assured him that "it would be met more promptly."

The general agent himself testified that Parks told him "he had, prior to getting the $2,000, been accommodated at the bank, and that he did not inquire whether for himself or the company."

In addition to this, it appears that two other notes were made by Parks to third persons, which were paid by the company, one of which was left as a collection at the bank.

Now, while there is other testimony in conflict with some of that just recited, we think the court below was justified in finding that the agent had authority to procure the discount of these notes. Certain it is that the bank could fairly and reasonably infer that the authority had actually been given.

There was a clear authority to give the notes of Decem

ber, 1859; and the authority to give the others was fairly inferable from the course of trade, and the fact that similar transactions were recognized by the principal as done by its authority; and this conclusion is as applicable to the renewals as to the original discounts.

If the prior notes were not promptly paid, the managing agent, when advised of the fact, could reasonably know, as a business man, that some arrangement had been made for the extension of time; and what such arrangement usually was with paper payable to or at a bank. Then the company certainly knew that its note or notes were out for the $2,000, and there is testimony tending to show that information was sent of non-payment. During all this time, and with such knowledge as should at least have led the company to inquire into the acts of Parks, there was no dissent expressed, no repudiation of the steps taken by him, from time to time, to raise money. Edwards on N. & B., 87; *Munn* v. *Commission Company*, 15 Johns., 44; *Cairnes & Lord* v. *Bleecker*, 12 Id., 300. There was nothing to indicate that the agent, as to these loans, was acting under a limited and circumscribed authority; but on the contrary, the bank might reasonably infer that he had full power to do any and all things necessary to raise means to carry on the business of his agency, including the authority to make loans, and execute, from time to time, negotiable paper, in the name of the company.

Thus far, then, we unite in the opinion that this judgment should not be disturbed. The case upon its facts we admit is not free from doubt. It comes to us, however, with every presumption in favor of the conclusion reached upon the facts in the court below. This conclusion we cannot think is so in conflict with the testimony as to warrant our interference.

We are then to inquire into the effect of the mortgage given by Parks, the renewal after his agency had ceased,

and his settlement with the company in 1861. And this part of the case we may dispose of in a few words.

There is no evidence that Parks and the company settled, upon the assumption that this debt had been paid by him. For aught that appears, if anything was said about it, the debt was recognized as a subsisting liability against the company. Appellant's argument, based upon such assumption, therefore falls to the ground. And it is unnecessary to consider the effect of such supposed settlement, if made without plaintiff's knowledge.

There is nothing whatever to show that plaintiff had knowledge that Parks' agency had ceased when this note 5. —— authority: presumed to continue. was given. Indeed such knowledge is expressly rebutted. And whether his authority was general, or special and unlimited as to time, the presumption as to those previously dealing with him is that it continued until there was notice of revocation. And however this notice should be given, whether directly or by such circumstances as justify its inference, is not material, for in this case it is not shown in any way. 1 Pars. N. & B., 120; Edws., 89; 12 Mod., 346; 15 Id., 110.

As to the mortgage and the extension of time, it must be remembered that Parks was an indorser of this note, 6. PROMISSORY NOTE: security and extension. and we are not aware of any rule which discharges the maker of a note when security is taken from, or time given to the indorser. The maker's liability is primary, and can be discharged at any time by paying the debt. And this he can do without regard to the extension given to the indorser and security. And this is especially so where an intention to release the principal is expressly negatived, as in this instance. The substitution of one simple executory contract for another does not extinguish the latter, and certainly it has never been claimed that the taking of further security from a debtor operated to discharge the debt. Much less could it

be claimed that the taking of a mortgage from the security would operate to release the principal.

We only remark, in conclusion, that it is not improbable that defendant may be entitled to be substituted, upon the payment of this judgment, to all the equities of plaintiff in and to the mortgage given by Parks. The question is not before us, and we therefore leave it open, that defend-ant may be free to pursue such course in the premises as it may deem necessary, and to demand such relief as equity can afford.

Affirmed.