No. 389.

## MILLER v. MILLER.

PRINCIPAL AND AGENT. —*Purchase of Stolen Property from Agent.*—*Previous Dealings with.*—*Revocation of Agency.*—*Notice.*—*Liability of Purchaser.*— Where the plaintiff had constituted J. as his agent, and had sent him to the defendant's mill on two occasions in charge of his teams loaded with wheat, and authorized him to do business for him, and the defendant to trust him, to deal with him, and to pay him the proceeds for the wheat, which he accordingly did, and the plaintiff received the money so paid without protest; and without any notice of the revocation of the agency the defendant received wheat on another occasion from J. which he had stolen from the plaintiff, and paid him for it the plaintiff can not recover of the defendant the value of said wheat. In delivering the third load of wheat, the defendant had the right to believe that the agent had been acting within the scope of his authority, as recognized and represented by the plaintiff to the defendant.

SAME.—*Third Parties Dealing with Agent.*—*Revocation of Agency.*—*Notice.*— Third parties dealing *bona fide* with one who has been accredited to them as an agent are not affected by the revocation of his agency, unless notified of such revocation.

From the Miami Circuit Court.

*L. Walker* and *W. B. McClintic*, for appellant.

*J. Farrar*, for appellee.

ROBINSON, C. J.—The appellant was the plaintiff below, and commenced this action against the appellee.

The complaint alleges that one Andrew Johnson feloniously stole and carried away seventy-eight bushels and five pounds of wheat, the property of the appellant, and took said wheat to the mill of the appellee, who bought said wheat from him, said Johnson, and paid him therefor the sum of sixty-seven and $\frac{15}{100}$ dollars; that before suit, appellant demanded said wheat, which was refused, and also demanded payment for the same in said sum of sixty-seven and $\frac{15}{100}$ dollars, the said wheat being worth that sum, which appellee also refused, wherefore, etc.

The appellee answered in two paragraphs. The appellant

demurred to each paragraph of the answer, which was over-ruled and exception saved.  Appellant then filed a reply. The cause was tried by the court, with a finding for the appellee, and, over a motion for a new trial, judgment was rendered on the finding.  Under the assignment of errors, it is alleged that the court erred in overruling the demurrer to the first and second paragraphs of the appellee's answer, and in overruling appellant's motion for a new trial.

It is assumed in argument by the counsel for the appellant that the court erred in overruling the demurrer to the first and second paragraphs of the answer, because there is no denial of the theft of the wheat, and, for other reasons, does not state a defence to the action.   The answers do not materially differ, and allege substantially the following facts : That the appellee was a merchant miller in the city of Peru, Indiana, and as such engaged in the manufacture of flour, feed, middlings, etc.; that on the 24th day of October, 1885, appellant was at the appellee's mill, and bargained with him for two tons of middlings at the price of $24, in payment of which he would send some wheat he had to spare to appellee ; that the appellee could take the price of the middlings out of the wheat and pay the appellant the difference ; that, pursuant to said bargain and agreement, appellant, on the 27th day of October, 1885, sent said wheat to appellee by his agent and servant, the said Andrew Johnson, being the same person mentioned in the complaint as having stolen the wheat sued for in this action ; that said Johnson drove the appellant's horses hitched to his wagon to appellee's mill with $39\frac{43}{60}$ bushels of wheat of the value of $34.15 ; that the appellee received said wheat under the agreement previously made with the appellant, and delivered to said Johnson for the appellant said two tons of middlings and $10.15 cash, all of which said Johnson properly delivered to the appellant; that on the 30th day of October, 1885, said Johnson, as appellant's agent and servant, with appellant's team, took to appellee's

mill 71$\frac{30}{60}$ bushels of wheat which appellee bought and paid the sum of $61.45 to said Johnson as such agent and servant, who paid the same to the appellant; that afterwards, in pursuance of said contract, as appellee understood and believed it to be, to wit, on the 2d day of November, 1885, said Andrew Johnson, appellant's agent and servant as aforesaid, did, with appellant's team and wagon, recognized and known as such by appellee, deliver to the appellee at his said mill 78$\frac{5}{60}$ bushels of wheat alleged by appellant to have been stolen, and being the same quality and kind of wheat as the said two preceding loads, for which appellee, without notice or objection of any kind by appellant, paid said Johnson the the sum of $67.15 in good faith, believing, at the time of buying said wheat and paying therefor, that said Johnson was still the agent and servant of the appellant as he had been in hauling and selling the preceding loads; that in buying said last wheat appellee was ignorant of any change in the relation of master and servant, before that time existing between said appellant and said Johnson; that the appellee bought said wheat in good faith, believing it to be the wheat of the appellant, and delivered, as before, by his agent and servant, etc.

The law is so firmly settled as to require no citation of authority that, "In general no man can sell goods and convey a valid title to them unless he be the owner or lawfully represents the owner."

"A thief can not acquire any title to stolen property by means of a larceny thereof, and can confer no title thereto on his vendee, although such vendee may be a purchaser in good faith."

"No one can transfer a greater title or better right to property than he possesses himself."

But while these principles of law are well settled, the question is, under the case made by the answer to the complaint, must not another principle control in the decision of the question involved, as made by the answer. It appears

from the answer that three different transactions took place between Johnson and the appellee, in close proximity, in relation to the sale and exchange of appellant's wheat to the appellee. It is clearly shown by the answer that in the first two of these transactions Johnson was the agent of the appellant, and had full power to transact the business in the delivery to the appellee of the wheat, and to receive payment therefor; that with a knowledge of these facts by the appellee, and without notice of any change or revocation of Johnson's agency, a third delivery of wheat was made by him to the appellee, which was of the same quality and with the same team as before, which the appellee purchased of said Johnson in good faith, and paid him therefor, as on previous deliveries. Now, as it is claimed by the appellant that the third load of wheat delivered to the appellee was stolen by appellant's agent, in the delivery of the two previous loads, and purchased by the appellee in good faith, does the answer state facts sufficient to constitute a defence to the action, and was the appellee protected in the last transaction by the first two with the appellant's agent, and taking it for granted that both parties were innocent, which should sustain the loss occasioned by the last transaction ?

" A purchase without notice from one who has no title and no right or apparent authority to transfer the property, will not be a defence," but the allegations in the answer clearly make it appear that under the agency of Johnson, as constituted by the appellant, Johnson had the apparent authority to transfer the last load of wheat to the appellee.

Therefore, under these facts, who in equity ought to be the loser? The appellant had clearly constituted Johnson as his agent; he sent him to appellee's mill in charge of his team loaded with wheat, authorized him to do business for him, and appellee to trust him, to deal with him, and to pay him the proceeds for the wheat, which was returned to the appellant, and received by him without notice of revocation or change in such agency to the appellee. Under such cir-

cumstances, the appellee was not compelled, when each load of wheat was brought to his mill, to be put upon inquiry and ascertain whether the agent had rightful authority to sell and transfer the wheat.    It was the appellant who made it possible for the agent to do the wrong.   If there was negligence, it was the negligence of the appellant.   After the agent had delivered the two loads, received payment therefor, and the appellant had received it without protest or notice to the appellee, the appellee was certainly not negligent in paying the agent for the third load, and so far as appellee was concerned or can be required to know, rightfully paid the agent for the third load, and if the agent failed to pay the appellant the money for the third load, and stole it, such fact was made possible by the appellant, and he in equity should sustain the loss.   In delivering the third load of wheat, appellee had the right to believe the agent had been acting within the scope of his authority, as recognized and represented by the appellant to the appellee.

It can not be said that there was such a revocation of Johnson's agency as charged the appellee with notice.

" The revocation of an agency becomes operative, as to the agent, from the time it is actually made known to him.   Third parties dealing *bona fide* with one who has been accredited to them as an agent are not affected by the revocation of his agency, unless notified of such revocation."

" Where a party is shown to have been the agent of another in a particular business, and continues to so act within the scope of his authority, it will be presumed that his former authority still continues, and will bind his principal, unless the persons with whom he acts have notice that his agency has ceased."

It conclusively follows from what we have said relating to the answer, that the facts contained therein bring it within the known maxim of law and equity, " That, where one of two innocent persons must suffer, he shall suffer, who, by his confidence or silence or conduct has, misled the other."   Ap-

plying this rule to the questions involved in the answer, the loss must fall upon the appellant, and the court correctly overruled the demurrer to the answer. Story Agency (3d ed.), sections 127, 443 and 470 ; *Howe Machine Co.* v. *Simler*, 59 Ind. 307 ; *Ulrich* v. *McCormick*, 66 Ind. 243 ; *Root* v. *French*, 13 Wend. 570.

Under the motion for a new trial, appellant claims that the finding was contrary to law, and not sustained by sufficient evidence.

The evidence for the appellee clearly sustained the theory of the defence as contained in the answer, under which we have held the law with the appellee.

There was some conflict in the evidence, but the evidence tended to sustain the finding, and we can not interfere with the finding upon the weight of the evidence.

The judgment is affirmed.

