CHESHIRE PROVIDENT INSTITUTION, APPELLANT, v. HENRY FEUSNER ET AL., APPELLEES.

FILED JANUARY 22, 1902. No. 10,132.

Commissioner's opinion, Department No. 1.

1. **Undisclosed Principal:** GENERAL AGENT. Where an undisclosed principal puts it in the power of his general agent to act as principal, and the agent collects money due on a note to the principal, the latter will not be permitted to deny the authority of the agent to make such collection.

2. **Principal:** GENERAL AGENT: PRESUMPTION. Where authority as general agent to transact all the principal's business of a particular kind in a particular place is once shown to exist, it will be presumed to continue, unless shown to have been revoked.

3. ———: AGENT: MONEY LOANING. Where one loans money to a large number of borrowers through an agent, and by agreement between himself and such agent the latter takes all loans payable to himself and indorses the notes to the loaner, and draws a sight draft upon the latter for the amounts needed from time to time to fill applications, and the agent is entrusted

with the care, renewal and collection of such loans, such loaner is not a bona-fide holder of negotiable paper, and payment to the agent will be deemed payment to the principal.

4. Evidence: FINDING. Evidence examined, and held to sustain the finding of the trial court that the loan in controversy was paid to the agent of the holder.

APPEAL from the district court for Harlan county. Heard below before BEALL, J. *Affirmed.*

*Cobb & Harvey,* for appellant.

*C. M. Miller,* contra.

KIRKPATRICK, C.

This is a suit brought in the district court of Harlan county by the Cheshire Provident Institution against Henry Feusner and Ellen Feusner, his wife, to foreclose a mortgage given to secure a note for $500, with interest, executed October 11, 1886, by Feusner and wife, payable to Carlos C. Burr on January 1, 1892, at the First National Bank at Lincoln, Nebraska. The petition is in the usual form, and alleges that plaintiff purchased the note and mortgage from C. C. Burr in the usual course of business, for value and before maturity. The answer admits the execution and delivery of the note and mortgage as alleged, and pleads that on or about April 24, 1890, the defendants paid the note and mortgage in full to the plaintiff, being the sum of $500 principal, and $40 interest thereon, up to January 1, 1891. There was judgment for defendants, and plaintiff prosecutes this appeal. It appears from the record that, early in the year 1886, Burr, who for some time had been engaged in the farm loan business at Lincoln, wrote to plaintiff, and asked it if it wished to invest some money in western farm mortgages. Arrangements were finally completed by which plaintiff agreed to take $10,000 worth of farm mortgages. It was arranged that the notes and mortgages should be taken in the name of Burr, and by him indorsed and guaranteed,

and sent to plaintiff. Burr was to pass upon the abstracts, determine whether the loans were good or not, and transact all other business relative thereto. The practice was for Burr to examine the application made by the borrower, and, if satisfactory to him, he prepared a note and mortgage payable to himself, had an abstract prepared, and, if it appeared therefrom that the title was good, he attached to the note which had been executed by the borrower a sight draft on plaintiff for its amount, and then delivered to the borrower his check for the amount of the loan. After the first $10,000 order had been filled in this manner, Burr continued transacting business for plaintiff in the same manner until he had invested from $50,000 to $60,000. Plaintiff never knew or corresponded with any of the mortgagors. Some time before the maturity of the coupons, they were sent to Burr for collection and remittance. Burr apparently, during the entire course of this arrangement between the parties, treated the loans in all respects as though they were his own. When they matured, and parties were not ready to pay them, he would grant extensions, and took coupons for the interest to mature during such extensions, forwarding them to plaintiff. He foreclosed mortgages when in his judgment he deemed it best; employed and paid attorneys to conduct such foreclosure proceedings; paid the taxes on property where foreclosures were commenced; made all collections of interest, and very frequently collected the principal, seemingly making such collections without regard to whether he had the papers or not. Many of the principal notes were sent to him by plaintiff for collection and remittance. On the loan in suit, he collected one interest payment at the time the loan was executed. Thereafter he collected the interest coupon maturing January 1, 1888, and January 1, 1889, and January 1, 1890, and after that himself paid to plaintiff the interest coupons maturing January 1, 1891, 1892 and 1893. Some time in April, 1890, defendant wrote to Burr and inquired whether he could pay off the loan in controversy. Burr replied that he could by paying interest

up to the first day of the following January. Defendant accordingly remitted to Burr a draft for $540, being in full payment of the principal and the interest for one year, and up to January 1, 1890. During the progress of the business between plaintiff and Burr, which extended from 1886 to the spring of 1895, Burr kept an account with plaintiff in the name of "O. G. Nims, Treas."; Nims being the treasurer of plaintiff company. As Burr from time to time collected items of interest or principal, he would credit the account of plaintiff with such collections, and when they were remitted he would charge the account with such remittance. When he made the collection of the note in suit he credited plaintiff's account with $540, and remitted to plaintiff the $40 interest. Thereafter he paid two or three interest payments, concealing from plaintiff the fact that he had collected the principal. In the spring of 1895, plaintiff sent R. H. Porter, one of its trustees, to Lincoln to investigate the financial standing of Burr, and for the purpose of looking into its various loans. While at Lincoln, Porter was shown this account between Burr and Nims, plaintiff's treasurer, and it was then disclosed to him for the first time that Burr had collected the principal of the note in suit, as well as that of many others, which he had likewise failed to remit. Thereupon Porter asked Burr to pay the company the money he had collected and not remitted. Burr was unable to do this, and Porter then tried to get him to secure the company. This Burr was also unable to do. Burr never made an assignment of the mortgage in suit to plaintiff, and none was ever recorded on the records of Harlan county. Indeed, none was ever asked for until in 1896, about the time this foreclosure suit was begun. At the time Burr collected the principal and last interest coupon from defendant he executed and delivered to defendant a release of this mortgage, which was duly placed of record in Harlan county. O. G. Nims and R. H. Porter, on behalf of plaintiff, each testify that Burr was never authorized to collect the principal of the note in suit, and that they had no knowledge that he had

collected the principal until Porter's visit to Lincoln. Burr swears positively that he was authorized to collect both principal and interest on all the loans negotiated by him.

The single question presented by this controversy is whether Burr was the agent of plaintiff. If he was, then payment to him was payment to plaintiff. If he was not, then his receipt of the principal sum due can not have the effect of discharging the indebtedness. From the facts already detailed, it is clear that the money loaned by Burr in these various transactions was not his money, but that of plaintiff, and that the notes and mortgages were made payable to him, and by him guaranteed and indorsed to plaintiff, only for convenience in the transaction of the vast business in which these parties were engaged. Plaintiff resided in the east, at a considerable distance from the properties which secured its loans, and the reason for taking these loans in the name of Burr was based in its confidence in his financial standing, as well as his superior facilities for passing upon the value of the securities offered. But this is an equitable proceeding, and equity looks at the substance. These transactions, notwithstanding the form taken by them, were, in reality and effect, loans by the plaintiff, through a broker or agent, to the borrower. The record shows beyond question that Burr was the general agent of plaintiff in the transactions narrated, as he was clearly authorized to transact all of plaintiff's loan business in the section where Burr was located. *Cruzan v. Smith*, 41 Ind., 288. Many letters, covering a correspondence which lasted through ten years, are in the record, in many of which plaintiff expressly authorizes Burr to make collections, and sends the papers therewith. In other instances, remittances from Burr of interest or principal are acknowledged, with the statement that papers to cover the remittances were being thereupon sent to Burr. And in still others, the statement is made that plaintiff has honored Burr's draft in some particular loan, naming the loan and its amount, and urging him to send

on the papers to it. Under this state of facts, plaintiff can not be regarded in the light of an innocent and bona-fide holder for value of negotiable paper. It is the innocent holder whom the law seeks to protect. Plaintiff's rights are to be determined under the principle of the law of agency, that where one deals with a supposed principal, who is only an agent, and later discovers the undisclosed principal, he can invoke an estoppel against the latter, who can not deny the full authority of his undisclosed agent. *William Lindeke Land Co. v. Levy,* 79 N. W. Rep. [Minn.], 314; *Steele-Smith Grocery Co. v. Potthast,* 80 N. W. Rep. [Ia.], 517.

Plaintiff's claim that in receiving payments from Burr from time to time, and in sending papers to him "for collection and remittance," it was merely looking to him on his guaranty, can not avail it. In the commencement of these negotiations, and on March 3, 1886, plaintiff sent this telegram to Burr: "You may send ten thousand. Why not make to your order and assign to us or in blanks." In an explanatory letter mailed the same day, it says, through Treasurer Nims: "I suggest have loans payable to your order, as I have supposed that the best form. Is there any reason for making to us direct?" This suggestion was adopted, and pursued throughout. It is true, no reason appears to have been suggested why the loans should have been made payable direct to plaintiff, but the fact that the question was submitted in this form argues strongly against the claim of plaintiff that it was merely proposing to purchase loans previously made by Burr on his own account; for, if this alone had been in its contemplation, there could have been no conceivable reason why the loans should have been made in the name of plaintiff direct. Moreover, the correspondence above detailed conclusively shows that the loans referred to were not yet in being, and both parties to the proposed contract contemplated that the money to be loaned was to come from plaintiff direct, notwithstanding the loans were by agreement made payable to Burr, and by him guaranteed and indorsed. The suggestion of

plaintiff, adopted by Burr, enabled the latter to hold himself out as principal in all of these transactions, and during the continuation of this general agency the loan in controversy was negotiated. We can conceive of no legal principle inconsistent with the presumption that an authority as general agent to transact all of plaintiff's business in the making of loans, and the collection of interest and principal, passing upon titles, foreclosing mortgages, and renewal of loans, having been once established, such authority continued, and that under it the loan in suit was negotiated and subsequently collected. Where such general authority is once shown to exist, it must be presumed to have continued unless shown to have been revoked. *Insurance Co. v. McCain*, 96 U. S., 84; *McNeilly v. Continental Life Ins. Co.*, 66 N. Y., 23.

It seems to us that the finding of the trial court that Burr was plaintiff's agent for the collection of the principal sum due on the loan in controversy is amply sustained by the evidence. It is therefore recommended that the judgment of the district court be affirmed.

HASTINGS and DAY, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the trial court is

AFFIRMED.