M. L. RUNGE, Receiver, Appellee, v. D. E. BENTON, Appellee; E. McCAFFREY, Intervener, Appellant.

846

DECEMBER 13, 1927.

REHEARING DENIED MARCH 17, 1928.

*Salinger, Reynolds & Meyers,* for appellant.

*L. W. Powers,* for plaintiff, appellee.

ALBERT, J.—Mrs. E. McCaffrey was the owner of a tract of land in Crawford County, on which one Bernhardt was tenant. In the year 1924, Bernhardt sold his corn crop to D. E. Benton,  a grain merchant, and in return therefor Benton gave him a check in the sum of $1,720, payable to the order of Mrs. E. McCaffrey and Bernhardt. This check was drawn on a Wall Lake bank, and bore date December 24, 1924. On December 29th, Mrs. McCaffrey and her tenant met, at the Traders Bank in Vail. Bernhardt indorsed the check to Mrs. McCaffrey, who in turn indorsed it to the Traders Bank, and accepted in return therefor a draft drawn in her favor by the Traders Bank on the First National Bank of Chicago. The Traders Bank was a private institution, owned and operated by McHenry & Seemann, of Denison, and the cashier in charge was one Lorenzen. On December 31st following, the cashier was notified by the owners of the bank to close the doors, and on the 6th day of January following, a receiver was appointed. In the intermediate time, Lorenzen was in charge of the bank, and was in the bank attending to some business until the time the receiver was appointed.

On December 31st, Mrs. McCaffrey attempted to cash this draft at a bank in an adjoining town, but they refused to accept it, because of the conditions existing in the Traders Bank. She then forwarded the draft to Wall Lake for collection, and on presentation of the same at the bank in Chicago on which it was drawn, it was refused payment, for want of funds.

On December 31st, when Mrs. McCaffrey was refused payment on this draft, she went to Benton, and demanded the money from him. He refused to pay her, and he advised the Wall Lake bank on which this check was drawn to stop payment thereon, which was done; and the check issued by Benton to this landlord and tenant came back into the Traders Bank before the receiver took charge. The receiver sues Benton on this check. He answered, setting up the relations of Mrs. McCaffrey to the check, and asking that she be brought in. She came into the case by way of a petition of intervention, in which she alleges, in substance, the foregoing facts, but in addition, alleges that, prior to the appointment of the receiver, she had a conversation with Lorenzen, the cashier then in charge, and advised him that she did not get her money on the draft, and he told her that, as soon as the check was returned, he would return it to her, and take back the draft; and she agreed to this. The record is stipulated, and sustains the above facts. Benton came into court, and paid in in cash the $1,720, and asked to be relieved from further liability. Under this set of facts, the district court held that the receiver was entitled to this fund, and Mrs. McCaffrey's petition of intervention was dismissed. Judgment was entered against Benton for the sum of $1,794.38. Both Mrs. McCaffrey and Benton appeal.

The crux of this case is whether the receiver or Mrs. McCaffrey was entitled to this fund. The appellee rests his case wholly on our line of decisions that, where one buys a draft from a bank in the ordinary course of business, and the issuing bank fails before it is presented to the drawee bank for payment, the purchaser of the draft is not a depositor in the bank, and is only a general claimant. Among these cases are *Andrew v. Chicago, M. & St. P. R. Co.* (Iowa), 211 N. W. 515 (not officially reported); *Leach v. Citizens' State Bank of Arthur,* 203 Iowa 782; *Danbury State Bank v. Leach,* 201 Iowa 321; *Leach v. Battle Creek Sav. Bank,* 202 Iowa 871; *Leach v. Iowa State Sav. Bank of Manning,* 202 Iowa 894; *Leach v. Mechanics Sav. Bank,* 202 Iowa 899; *Leach v. Iowa State Sav. Bank of Sioux City,* 204 Iowa 497; and numerous other Iowa cases.

The appellee loses sight of two propositions, however:

(1) All of the cases cited are cases against incorporate banks, and are governed by statute as to payment of creditors.

848

Such statute does not apply in a case like the present, where the bank involved is a private bank.

(2) Each of the cases above and similar cases have to do with the claim by the purchaser of a check or draft in which it is sought to establish a trust relation and to have preference as to funds in the hands of the receiver which came to him from the bank itself, on his appointment as such receiver.

The case at bar, however, is materially different in other respects from the cases above cited. It is apparent from a reading of this record that Mrs. McCaffrey got nothing in return for the check she indorsed and turned into the Traders Bank; or, to put it in a different way, the consideration wholly failed for her turning this check into the bank. Again, we think that, under the admitted facts in the case, what took place between Mrs. McCaffrey and the receiver amounted to a mutual rescission of the contract. The only answer to this by the appellee is that, the bank not being in operation at the time this occurred, Lorenzen had no authority to make any such agreement with her.

It is stipulated that he was the cashier and man in charge of this bank during the time it was in operation, and, as he was the general manager and cashier thereof, we are cited to no authority which would deny to him the right to make such a contract. Since he was in this position, and possessed this power, the presumption is that he continued to exercise this power until there was some evidence that it had been recalled. *Miller v. Miller*, 4 Ind. App. 128 (30 N. E. 535); *Whiting v. Western Stage Co.*, 20 Iowa 554; *Columbus Co. v. Hurford*, 1 Neb. 146; *Cheshire Provident Inst. v. Fuesner*, 63 Neb. 682 (88 N. W. 849).

It may further be said, under the stipulated facts, that, when the bank closed, on the 31st day of December, it was insolvent; because it is admitted, by reference to the pleadings in the application for the appointment of a receiver, that, from and after the 31st day of December, the bank was not paying its depositors and other creditors in the ordinary course of business. Under our holdings in this state, this is insolvency. If the bank was insolvent at the time this draft was issued, it perpetrated a fraud upon Mrs. McCaffrey by issuing the same;

and it is a fair inference from the facts that the bank was insolvent at the time the draft was issued. *State v. Cadwell*, 79 Iowa 432; *Campbell v. Park*, 128 Iowa 181; *In re Estate Brigham*, 144 Iowa 71. And if the bank was insolvent at the time the draft was issued, the bank would get no title to the check. 7 Corpus Juris 604. The fact that the owners of the bank ordered it closed is some evidence that they knew it was insolvent.

We are quite satisfied, under the situation in this case, that the district court erred in this matter, and that Mrs. McCaffrey should have been held to be entitled to this fund.—*Reversed.*

EVANS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.