# THE FIRST NATIONAL BANK IN MINNEAPOLIS, MINNESOTA, a Foreign Corporation, Respondent, v. JORGEN RASMUSSEN and Fred E. Hammel, Appellant.

(220 N. W. 840.)

Opinion filed August 6, 1928.

*Crawford, Cain & Burnett,* for appellant.

*Sullivan, Hanley, & Sullivan,* for respondent.

BURKE, J. This is an action to foreclose a real estate mortgage executed and delivered by Jorgen Rasmussen to the Farmers Bank of Dunn county, North Dakota, to secure the payment of one note for $1500 and one note for $576.30.

On April 1, 1921, the Dunn County Bank indorsed the $1500 note to the First National Bank of Minneapolis and assigned the mortgage to the said bank.

On the 22nd day of November, 1921, Rasmussen executed and delivered to the Dunn County Bank a renewal of the $1500 note upon which there was then due $1,653.26, and the bank forwarded the same to the First National Bank of Minneapolis. The notes were payable at the Dunn County Bank. On the 9th day of February 1923, the defendant, Rasmussen, without knowledge that his notes had been indorsed to the plaintiff bank, paid the amount due on the notes and mortgage to the Dunn County Bank. After paying the amount due and asking for the notes and mortgage, he was told, that they were not there at that time, but that the bank would get them and return

them to him. They executed and delivered to him at the time, a satisfaction of the mortgage, which was duly placed on record. This money collected by the Dunn County Bank was not forwarded to the plaintiff; and in December 1923, the Dunn County Bank failed, and went into the hands of the receiver, and on the 17th day of March, 1924, the plaintiff filed the assignment of the mortgage in the office of the register of deeds in Dunn county, and began an action to foreclose the mortgage.

The trial judge made findings of fact and conclusions of law, favorable to the plaintiff upon which judgment was duly entered, and from which the defendants appeal, demanding a trial de novo.

There is just one question involved in the case, and that is, did the Dunn County Bank have authority to receive payment of the note and mortgage? It is conceded that up until 1920, the Dunn County Bank did have such authority, that until that date, the plaintiff bank forwarded to the Dunn County Bank notes and mortgages for collection, and received in return what was called a trustee's receipt, which showed that the Dunn County Bank was holding the notes in trust for collection and remittance to the bank.

It is the contention of the plaintiff that that custom ceased in 1920, and the plaintiff retained the custody of the notes until the amount due thereon was collected by the Dunn County Bank and sent to the plaintiff bank by the Dunn County Bank.

P. J. Leeman, vice president of the plaintiff bank, testifying for the bank said:

"Prior to 1920, it was customary for us to forward our collateral notes to the borrowing bank early in the fall for collection; after that time, the bank made collections and forwarded to us with instructions upon which paper to endorse. After 1920 and 1921, we insisted upon remittances being made to us on each individual collection."

Question, "In brief state the method in making collections on collateral owned or held by the First National Bank following the year 1920?"

Ans. "Payments on collateral were forwarded to the First National Bank in Minneapolis, endorsed on collateral notes. If paid in full the note was returned; and, if a partial payment was made, a renewal note

was accepted for the balance. In all cases we insisted upon remittances being sent to us before we returned the note."

Ques. "What was the origin or occasion of that custom?"

Ans. "Objection on the part of the chief national bank examiner."

This last statement is corroborated by defendant's exhibit A, a letter from the plaintiff, signed by P. J. Leeman, vice president, which reads as follows:

"Jan. 10, 1920.

"Farmers Bank of Dunn County,

"Dunn Center, N. D.

"Dear Sirs:

"Our collateral department has just called my attention to the fact we are still holding your trust receipt dated November 15th for $30,-472.70 in collateral notes which we sent you in order to enable you to get renewals. We dislike very much to have collateral out of our possession for any great length of time, especially in view of the fact we anticipate a call from the examiner in the near future, who always objects very seriously to our taking trust receipts to be held for any length of time. We will appreciate it very much if you will send us in some notes by return mail, if possible, to replace the collateral notes which you hold."

"Yours very truly,
"(Signed) P. J. Leeman,
"Vice President."

It appears from this letter as well as from the testimony of Mr. Leeman, that it was the bank examiner who objected to the absence of the collateral in the bank for any great length of time.

There is, however, no statement in this letter, that the custom would be discontinued, and there is no demand for the return of the collateral. The request is, "to send some notes by return mail, if possible, to replace the collateral notes which you hold.

On November 2, 1922, the Dunn County Bank wrote the plaintiff as follows:

"Would you kindly forward to us the real estate mortgage that is with the Jorgen Rasmussen note, as we wish to make a copy of the same, and will return to you as soon as we have copied said mortgage."

On November 6, 1922, the plaintiff bank wrote to the Farmers Bank of Dunn County:

"We acknowledge receipt of your letter of the second, and as requested we return herewith 'the real estate mortgage, as listed on the inclosed trust receipt. Kindly sign and return to us."

This letter was signed by the assistant cashier and it shows that the custom of returning collateral to the Dunn County Bank with a trust receipt to be signed and returned to the plaintiff bank prevailed at that time. It will be noted that it is the trust receipt which the plaintiff bank requested the Dunn County Bank to return, not the mortgage, but the Dunn County Bank returned both the mortgage and the trust receipt on November 9, 1922, as shown by exhibit "N2."

The record also shows that it was the custom of the Dunn County Bank to collect notes held by the plaintiff bank and forward the proceeds, and the note would then be returned by the plaintiff bank before 1920.

Under date of October 25, 1916, the Dunn County Bank writes:

"We herewith hand you our draft for $702 payable to yourself. For this kindly return us our B. R. No. 2075 W. N. Alverson which you are holding as collateral to our loan."

On October 27, 1916, the plaintiff bank returned the W. N. Alverson note which was paid on October 25, 1916. On December 1, 1916, the plaintiff bank wrote the Dunn County Bank acknowledging the receipt of $775.75, and returned to the Dunn County Bank the H. Beechner note for $175, and the Albert B. McAdoo note for $605. There are other letters of similar import. All of which shows that the custom of collecting and forwarding the proceeds of collateral notes to. the plaintiff bank while such notes were in the possession of the plaintiff bank prevailed before 1920, and this is corroborated by the testimony of F. W. Brendemuhl, who was cashier of the Dunn County Bank, and' who states that after 1920, they collected collateral notes held by the plaintiff bank forwarding the proceeds with request for the return of the notes collected.

There is also a letter dated March 23, 1922, from the Dunn County Bank to the plaintiff bank in which it is stated:

"We are sending renewal and new collateral in the amount of $27,-188.73 as per inclosed list. . . . The balance of your collateral

will be forwarded to you just as soon as we are able to get the renewals . . . Where the items are marked 'hold' keep the old note and mortgage as collateral. Where they are marked 'return' kindly return us old paper and collateral attached.'"

The lists sent at that time included the Jorgen Rasmussen renewal note for $1,653. The letters and the testimony show, that beginning back in 1916, the plaintiff bank relied upon the Dunn County Bank to renew and collect notes which the plaintiff bank held as collateral to the loan of the Dunn County Bank. If the plaintiff bank after 1920, ceased to forward the notes for renewal and for collection such change in the custom, if there was a change, did not deprive the Dunn County Bank of authority to collect. The testimony of plaintiff's witnesses clearly shows that authority. It is to the effect, that while they did not send the notes out for collection, the Dunn County Bank collected the notes, forwarded the proceeds, and the plaintiff bank then returned the notes after they were paid, and if only a partial payment was made, it was endorsed on the collateral notes and was accepted.

A case very much in point is the case of City Sav. & T. Co. v. Peck, 92 Vt. 310, 103 Atl. 1020, the facts are practically the same, and the court said:

"When the transferee of a note knows actually or by implication that a transferrer is collecting principal and interest upon it from the makers who have no knowledge of transfer, and offers no objection, the payments should, in equity, be treated as made to the holder's agent."

. . .

"We think the chancellor was warranted in finding, as fairly inferable from the facts stated, that the plaintiff, at the time it took the note and thereafter, looked to and relied upon its president, Adolph Rose & Co. and Aiken to pay or see that the note was paid, and expected Aiken to collect the note and interest of defendants, and that plaintiff knew, or was put upon inquiry and ought to have known, that Aiken was dealing with and collecting money upon the note from defendants. If the plaintiff expected Aiken to collect the note and interest of defendants, it must have expected him to do so as its agent, for he had no right to do it otherwise. There is no other reasonable conclusion to be drawn especially in view of the further fact that plaintiff knew, or ought to have known, that Aiken was dealing with de-

fendants and collecting money of them on the note, and so far as the case shows, made no objection thereto. In these circumstances, we think the payments made by defendants to Aiken should in equity be treated as made to him as plaintiff's agent, to be applied on the note, and that they were properly used by the chancellor in reduction of the sum due in equity."

Shoemaker v. Ragland, 202 Iowa, 947, 211 N. W. 564:

"Where agent takes initiative and performs services which principal accepts, act is as binding on principal as though he had taken initiative and directed or requested agent to act. . . .

"Where principal has not actually conferred authority on agent, he will not be permitted to deny it where, by his conduct, he has asserted it, if denial would prejudice an innocent third person. . . .

"Assignee under unrecorded assignment of mortgage, concealing assignment from mortgagor, having permitted assignor to collect interest as agent for himself, as undisclosed principal, could not collect mortgage notes from or foreclose against mortgagor after assignor had been paid."

McCullough v. Reynolds, 181 Iowa, 1089, 165 N. W. 333:

"Evidence in action to foreclose mortgage *held* to establish the authority of plaintiff's agent to receive the payment relied on as a defense.

"The defense of payment to agent having authority to receive it is not affected by any embezzlement of the funds by him or any forgery of release of mortgage securing the note paid.

"Payment of note to agent having authority to receive it is none the less effectual against the principal because of the agent not being in possession of the note."

Cheshire Provident Inst. v. Feusner, 63 Neb. 682, 88 N. W. 849:

"Where an undisclosed principal puts it in the power of his general agent to act as principal, and the agent collects money due on a note to the principal, the latter will not be permitted to deny the authority of the agent to make such collection."

In the case at bar, the plaintiff bank permitted the Dunn County Bank to handle the collateral as its own. It was all made payable to the Dunn County Bank and was all payable at said bank. It was renewed and collected by the Dunn County Bank from 1916, until the

bank closed in December 1923. According to the testimony of Leeman, the Dunn County Bank had actual authority to collect the collateral when it was due, and forward the proceeds to the plaintiff bank.

Leeman, vice president of the plaintiff bank, says:

"Payments on collateral were forwarded to the First National Bank in Minneapolis endorsed on the collateral notes, if paid in full the note was returned and if a partial payment was made a renewal note was accepted for the balance, in all, cases we insisted upon remittance being sent us before we returned the note."

The plaintiff bank not only knew that the Dunn County Bank was collecting the collateral notes, but insisted on collection and remittance. It was a stranger in such transactions to all the world, except, the Dunn County Bank. Its interest in the note and mortgage was unknown to the defendant until thirteen months after payment. It left the handling of such collateral exclusively to the Dunn County Bank. Whether the notes were sent by the plaintiff bank to the Dunn County Bank for collection, or whether they were no longer sent after 1920, the fact remains, that with the knowledge and expressed demands of the plaintiff bank, the Dunn County Bank continued to renew and collect the notes forwarding the proceeds to the plaintiff bank and receiving in return the notes paid. Thus, the Dunn County Bank had authority to collect the notes, and having such authority it doesn't make any difference, whether it had the note or did not have it at the time of payment.

Campbell v. Gowans, 23 L.R.A.(N.S.) and note page 415, as follows:

"This doctrine was also recognized and stated in Union Trust Co. v. McKeon, 76 Conn. 508, 57 Atl. 109, wherein it was held that the trial court committed error in holding that want of possession of securities by the agent was the controlling fact, which, as a matter of law, prevented the court from drawing any inferences, from other facts found, that the agent had apparent authority to receive the contested payments. In reaching this conclusion, the court said: 'Possession of the securities by the agent, of itself, in the absence of countervailing facts, clothes the agent with apparent authority, and justifies a third party, relying upon that fact, and acting in good faith and with notice, in making payments upon the securities.'

"Agency or express authority to receive payment of securities may, as already indicated, be shown by other proof than the possession of the securities, and when such authority is shown, the payment is binding on the holder, although the security paid was not in the custody of the agent. To establish agency or express authority, it is not essential that it be proven by any formal written instrument or special oral contract, but, like other questions of agency, it may be established from the mutual conduct and relations of the parties, or from the general nature of the transaction and the surrounding circumstances."

Swarthout v. Meyers, 56 N. D. 301, 217 N. W. 160; Bernard v. Madsen, 52 N. D. 822, 204 N. W. 196; Robinson v. Swenson, 54 N. D. 573, 209 N. W. 982.

We are of the opinion that the Dunn County Bank had actual authority to receive payment on the note, and the judgment must be, and is reversed, and the action is dismissed with costs.

NUESSLE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur.