## TAPPAN v. MORSEMAN.

1. **Agent:** PAYMENT TO. If a debtor, owing money on a written security, pays to or settles with another as agent, it is his duty, at his peril, to see that the person thus paid or settled with is in possession of the securities. If not in possession, the debtor must show that the person to whom he made the payment, or with whom he made the settlement, had special authority, or had been represented by the creditor to have such authority.

*Appeal from Johnson District Court.*

THURSDAY, JUNE 8.

PRACTICE: NEW TRIAL: AUTHORITY OF AGENTS: PAYMENTS TO AGENTS NOT IN POSSESSION OF THE EVIDENCE

Tappan v. Morseman.

OF THE DEBT, &c.— Action on note made by the defendant to Bowen, Holmes & Co., of New York, for $265.50. Defense, payment; jury trial; verdict for defendant. Plaintiff appeals.

*Clarke & Davis* for the plaintiff.

*Edmonds & Ransom* for the defendant.

DILLON, J. — There is but one question upon the record. Is the verdict so clearly against the weight of evidence, 1. AGENT: as to require us to reverse the ruling of the court payment to. below, denying the plaintiff a new trial. With a few exceptions, the facts in the case are not disputed. The plaintiff stands in the shoes of the payees. An outline of the facts upon which the defendant relied to sustain his defense of payment may be thus given. Avery, one of the payees, was in Iowa, had the note with him, and endeavored to effect a settlement with the defendant, but did not. At that interview, according to the defendant's testimony, " Avery said that Clarke & Davis were his attorneys, *that the note would be left with them*, and they would settle, and any settlement they made would be satisfactory." So, according to Edmonds' testimony, Avery said that " he would either leave the note with Davis, if he saw him, or would send it to him from Chicago if he did not see him, and that any arrangement made with Clarke & Davis would be satisfactory." Avery did not, however, see Clarke & Davis, nor did he leave the note with them, or send it to them from Chicago. Clarke & Davis had other claims in their hands against Morseman, on which they proposed to take goods from the defendant's store in payment. According to Davis' testimony (on which point he is not *specifically* contradicted by the defendant), shortly after Avery left, "Morseman came to me and desired me to execute a writing of the terms or basis upon which I had

agreed to settle the claims I had for collection against him (other than the Bowen, Holmes & Co. claim). I, therefore, executed this agreement: "We agree to receive, in full satisfaction of the following claims, viz.: Note of Morseman to Hallowell & Co., for $362.08; also the note of Morseman for $265.50 to Bowen, Holmes & Co. (the one in suit), goods out of the store of said Morseman, to be selected by J. T. Turner, at cost." This was signed by "Clarke & Davis," attorneys for the creditors therein named. "At the time I executed this agreement," continues Davis, in his testimony, "I did not have the note in suit, and had no authority to execute the agreement, but told the defendant that I would execute it, and then write Bowen, Holmes & Co., and if they would sanction what I had done, and send me the note, that I would surrender it, and take the goods, to all of which defendant assented." Davis wrote accordingly. Meanwhile, by Davis and defendant's consent, Turner selected the goods. They were sold at auction and brought $105.55, which sum was retained by the person who sold the goods. Morseman "would not allow Davis to have the Bowen, Holmes & Co. goods until the note was given up," nor the proceeds of the sale of the goods. After a few months the party holding the proceeds was about to leave and paid the *amount to the defendant*, who kept it nearly two years, and until the day of trial, when it was returned and afterwards tendered the plaintiff in court.

The plaintiff, in answer to Davis' letter, refused to sanction his settlement, or to take anything except the debt and interest, of which the defendant was at once notified. The case turns entirely upon the question, whether the plaintiff or Bowen, Holmes & Co. were bound by the agreement and acts of Clarke & Davis.

Now, it is perfectly clear that in point of fact Clarke & Davis had no authority to make the compromise or settle-

ment. They were not the attorneys of the payees or 1. AGENT: the plaintiff, with respect to the note in suit, at payment to. the time of the agreement to take goods in settlement. They had no prior authority to make that settlement. It was never ratified or adopted by the plaintiff; on the contrary, it was expressly rejected and disapproved.

But still, if Avery led the defendant to believe that Clarke & Davis had authority to settle without the note, and the defendant acted in good faith upon the belief thus superinduced, the settlement would then be binding, although, in point of fact, no authority to settle was ever conferred. Taking the defendant's own version of the matter, and that of Edmonds, his attorney, and it pretty clearly appears that Clarke & Davis, at the time of Avery's interview with the defendant, did not *then* have authority to settle; but Avery simply expressed his intention to leave the note with or send it to them, and then give them authority to settle. This intention he did not, for some unexplained reason, carry out, and the defendant had no vested right that it should be carried out. It is an undisputed fact in the case that the defendant *knew* all the time that Clarke & Davis had not *possession* of the note, and the law justly attaches great importance to the possession of a note by an agent as showing his authority, and equally great importance to the want of possession, as evidence of a want of authority. (Dunl. Pal. Agency, 274, 275, notes and cases there cited.)

So that it may be laid down as the general rule, that if a debtor, owing money on a *written security*, pays to or settles with another as agent, it is his duty, at his peril, to see that the person thus paid or settled with is in possession of the security. If not thus in possession, the debtor must show that the person to whom he pays or with whom he settles has special authority, or has been represented by the

creditor to have such authority, although for some reason not in possession of the security.

The circumstances tend strongly to corroborate Davis' testimony, that he made the agreement as to the note in suit at the defendant's request, both parties knowing that there was no authority, but both in good faith believing that authority would, without doubt, be granted. In truth, the defendant, in his testimony, while he makes some *general* statements not easily reconcilable with this portion of Davis' testimony, does not specifically, pointedly, or in detail, deny the *facts* stated by Davis. If he had, we could not have disturbed the finding of the jury.

The defendant and Davis miscalculated in supposing that the note would be sent to Davis with authority to settle; but the plaintiff should not be visited with the effects of this miscalculation.

It is our opinion that the court below should have granted a new trial. On the evidence before the jury, the verdict should most clearly have been for the plaintiff. If, upon the next trial, the defendant can satisfy the jury, by the weight of evidence, that he acted upon Avery's statement, that Davis did not sign the agreement at his request, with the promise to write for and obtain authority to settle, but held out and pretended that he was then already clothed with power to make the agreement, he will then make out a defense, provided the jury further find that Avery represented that Clarke & Davis had authority to settle, although not in possession of the note. In making this ruling, we are not unmindful of the rule that we cannot interfere in a case turning upon the evidence, if the case is nicely balanced or the material testimony essentially conflicting.

· But not to interfere in some cases is to sanction and hallow the mistakes which juries will sometimes make, and to leave the party injured, by a hasty and mistaken verdict, remediless.                                     Reversed.