W. W. STOKES, Next Best Friend of WILMA STOKES, Plaintiff and Appellee, v. GOLLMAR BROS., Defendants and Appellants.

**Parties:** WAIVER OF OBJECTION. Where plaintiff alleged that defendant was a corporation, or a co-partnership or voluntary association, but the character of the organization was not definitely known to the plaintiff, and notice was served upon it as a corporation, to which it responded and filed answer and proceeded to trial, any right defendant may have had to require a more definite statement of the capacity in which it was sought to be held was waived: and defendant having failed to raise the question at the proper time and in the proper manner plaintiff was not required to offer proof of the capacity in which it was sued.

**Negligence:** IDENTITY OF DEFENDANT: EVIDENCE. Evidence that plaintiff's horse was frightened by a caged wild animal, exhibited from a wagon bearing defendant's name, and placed upon the street by a driver in defendant's employ, was sufficient to justify a finding that defendant was the owner of the animal and responsible for its exhibition upon the street.

*Appeal from Sac District Court.*—HON. F. M. POWERS, Judge.

TUESDAY, JANUARY 27, 1914.

ACTION to recover damages for personal injury.—*Affirmed.*

*Johnston Bros.,* and *Elwood & Stanfield,* for appellants.

*Chas. D. Goldsmith* and *M. Currie,* for appellee.

GAYNOR, J.—The plaintiff alleges in her petition that the defendant is a corporation organized under the laws of the state of Wisconsin, or other state, or a copartnership or vol-

untary association; that the particular character of their organization is unknown to the plaintiff, but she alleges that it is one or the other; that on the 10th day of September, 1909, the defendant obstructed the public streets of the city of Sac City by placing thereon a cage or wagon in which was contained a wild animal, the character and quality of which was hideous and terrifying to domestic animals, and calculated to excite and frighten horses; that the plaintiff was driving upon the public street, and the horse behind which she was riding became frightened at the obstruction so placed upon the street, ran away, and threw plaintiff out, thereby injuring her.

The defendant, Gollmar Bros., appeared by attorney, and filed an answer, consisting of a general denial. A trial was had to a jury, and a verdict returned in favor of the plaintiff. Judgment being entered upon the verdict, the defendant, Gollmar Bros., appeals.

The original notice in this case, served upon the defendants, was served upon them as a corporation by serving the same upon one Ford, who, the return alleges, was the agent and manager of the defendant corporation.

At the conclusion of the plaintiff's testimony, the defendant moved for a directed verdict upon the following grounds:

(1) The plaintiff has wholly failed to prove the character of the defendants; the allegations of the plaintiff being that they are a corporation or copartnership, and that plaintiff does not know which. And there is no proof offered as to the nature or character of the capacity in which the defendants were sued, and a judgment cannot be returned against them. (2) That there is no proof that the defendants were in any way responsible for, or contributed to, the injury alleged to have been sustained by plaintiff. (3) That there is no evidence proving or tending to prove, or which could be submitted to the jury, showing that the defendants owned or controlled, or were in any wise responsible for, the wagon and its contents, which it is alleged caused the accident.

As to the first ground of the motion, it will be noticed

that the original notice was served upon the defendants as a corporation; that the defendants appeared in response to

1. PARTIES: waiver of objection.

the notice, and filed an answer, consisting of a general denial; that no motion for a more specific statement as to the character of the defendants was made. The verdict was rendered against Gollmar Bros., and judgment entered against Gollmar Bros., and Gollmar Bros. appeal.

Gollmar Bros. were apparently awake to the situation that Gollmar Bros. had been sued; that a suit was brought against Gollmar Bros. They recognized themselves as a suable entity; that they had a legal existence. They employed counsel, and filed answer, whether a corporation or a copartnership. They nowhere raised any issue in their answer as to the capacity in which they were sued.

Sections 3627 and 3628 of the Code of 1897 provide that, where the defendant is held in any way implying corporate partnership, representative, or other than individual capacity, the plaintiff may allege such capacity in a general way, or as a legal conclusion; but, if the allegation of capacity is controverted, it shall not be sufficient to do so in terms contradictory of the allegation, but the facts relied upon shall be specifically stated.

It is apparent from the allegation of the petition that defendants are sued in a representative capacity, whether a corporation or a copartnership. That Gollmar Bros. existed is made manifest by the whole record; that, whether a copartnership or a corporation, they are a suable entity. If they entertained a doubt as to this fact, or as to whether they are a corporation or a copartnership, and desired light upon this question before proceeding to trial, or if more light upon this question was necessary to enable them to make proper defense, or to protect the interests of Gollmar Bros., a motion to require plaintiff to state and elect as to the capacity in which she sought to hold Gollmar Bros. should have been made. The suit was brought against Gollmar Bros. in a representative

capacity. The service of notice was made upon them in their representative capacity. They appeared as such, employed counsel, and filed answer. There is no doubt in the record as to the existence of Gollmar Bros., that they are the parties charged, and the parties against whom the judgment appealed from is entered.

This does not present the question argued by counsel in which he claims that the plaintiff cannot allege in his petition that he has a cause of action against two or more defendants, naming them, but that he does not know which of the defendants is liable.

There is but one defendant charged in the petition, one defendant sought to be held, one defendant against whom the verdict was rendered, and the judgment entered; and the same defendant is now appealing to this court. The defendant, therefore, waived any right which it may have had to require the plaintiff to more definitely and specifically state the capacity in which the defendant was sought to be held, and cannot, after filing an answer, and proceeding to trial, raise this question at the conclusion of plaintiff's testimony.

As bearing upon this question, see *Iowa Savings & Loan Ass'n v. Selby*, 111 Iowa, 402; *Sparks v. Accident Ass'n*, 100 Iowa, 458; *Smith v. Milburn*, 17 Iowa, 30; *Andre v. C. N. W. Ry. Co.*, 30 Iowa, 107.

In the last case *supra* the petition did not describe the defendant as a corporation; did not aver the capacity in which it was sued. After verdict, a motion for arrest of judgment was made, and overruled. This court said: "It may be that this objection would have been sustained upon demurrer; but, after answer, trial, and verdict, it cannot be urged. Defects of this character, whereby the substantial rights of the parties are not affected, are not sufficient grounds for arrest of judgment or reversal thereof in this court."

There being no issue raised as to the capacity in which defendant was sued, proof was not required of the plaintiff

as to this matter. This disposes of the first and second grounds of the motion for a directed verdict.

The third ground of the motion involves the identity of the defendant as the party responsible for the wagon and its contents; it being claimed that there is no evidence that Gollmar Bros. owned or controlled the wagon which, it is claimed, was placed upon the corner of the street, or that the parties in charge of the exhibit, cage, or wagon containing the wild animal were the agents or servants in any way of Gollmar Bros.

2. NEGLIGENCE: identity of defendant: evidence.

The evidence upon this question is that Gollmar Bros.' Circus was in the city of Sac City on the 10th day of September, 1909.

(E. J. Eveleth testified:) I had dealings with Gollmar Bros. that day. I furnished them feed for the show. I saw the team that hauled this wagon down to the corner of Main and Fifth street. The same team was used for hauling wagons to the show ground. I noticed the name that was printed on this wagon. There was printed on there the words 'Gollmar Bros.' My transactions with Gollmar Bros. were through their advance man. I do not know who the man was who drove the team that hauled this wagon to the corner; but the same team that was used in hauling this wagon to the corner was used for other purposes, and in hauling their wagons to the show ground.

(Alonzo Ingram testified:) This wagon came in on the Gollmar Bros.' Circus train. I saw them unload it with the rest of the show. The wagon was maintained at this corner all day, and the man in charge was calling out and soliciting patronage, and charging an admission fee.

(Eveleth testified further:) I was at the Chicago & North Western Railway depot on the morning of September 10, 1909, and saw the show of Gollmar Bros. come in. They brought the wagon that was afterwards located during the day at the corner of Main and Fifth street, in Sac City. I saw the man and team that hauled the wagon from the depot to where it was afterwards located. The same man and team hauled it back to the train of Gollmar Bros. in the evening. I sold to Gollmar Bros. all the hay and feed they used that day.

I had a written contract to do so, signed by Gollmar Bros. I delivered such hay and feed, under that contract, to the same man that hauled the wagon from the depot to Main and Fifth street, and back again, and he used the same team to haul it to the show of Gollmar Bros.

(Ray Cobb testified:) I saw the wagon down there on the corner of Main and Fifth street on the 10th of September. Gollmar Bros.' show was in town that day. I saw what I thought was the same animal the last time the circus was in town. I saw it in the side show in Gollmar Bros.' Circus at Sac City. The time I saw it in the side show of Gollmar Bros.' Circus was in the fall of 1911.

.This is practically all the testimony on this point.

The defendant offered no testimony tending to show that they were not the owners of this wagon and animal which plaintiff claims frightened the horse, and caused the injury. The question here is: Is this evidence sufficient to justify the jury in finding that Gollmar Bros. owned the wagon and animal, and were responsible for its being placed at the point where plaintiff claims her horse became frightened?

It will be noticed that Eveleth furnished the hay and feed used by Gollmar Bros. on that day; that he furnished it under a written contract, signed by Gollmar Bros.; that he delivered it to the same man that hauled the wagon from the depot to and back from the place where it was kept; that this wagon and animal were unloaded from Gollmar Bros.' Circus train; that the name of Gollmar Bros. appeared in print upon this wagon in which the animal was kept. From this, the inference might be drawn, without involving any strained process of reasoning, that the wagon and animal belonged to Gollmar Bros.; that it was placed on the corner of the street, and maintained there, at the instance and under the control of Gollmar Bros. The significant facts are that the name of the defendant appeared upon the wagon in which the animal was kept; that it was unloaded from the train of Gollmar Bros.' Circus, and brought to that point, by a party acting for Gollmar Bros. in other matters; that it was returned

to the train of Gollmar Bros.; that Gollmar Bros. offered no evidence to negative this most natural inference that the wagon and animal belonged to them. The ownership of the animal and wagon, and the use to which it was put, was perfectly consistent with the business in which Gollmar Bros. were engaged. The general rule is that identity of name is identity of person in law, unless the contrary appears. When one calls at a post office and announces his name, he usually receives the letter bearing the name that he announces. In determining title, we assume that the party making the conveyance is the owner of the property conveyed, if we find that the record shows the title standing in the same name as that under which the subsequent conveyance is made. It is quite customary to mark articles of personality with the name of the owner for identification.

This court has had occasion recently to pass upon this question, and it was there held that proof such as we have in this record makes a *prima facie* case of ownership, and such as would justify a jury in finding ownership; nothing to the contrary appearing. See *Howell v. Mandelbaum & Sons*, 160 Iowa, 119, and cases therein cited. The case at bar is a much stronger case than that.

It is next urged that the defendant cannot be held, even though it was the owner of the wagon and animal alleged to have frightened the horse, for the reason that the evidence fails to show that the wagon and animal complained of, though wrongfully placed on the street by the defendant, was the proximate cause of the horse becoming frightened and the injuries consequent thereupon.

We had occasion to examine and dispose of this question in the case of *Christina Stokes v. City of Sac City*, 162 Iowa, 514. See opinion filed December 13, 1913. The complaint in that case is the same as here. See, also, same case, 151 Iowa, 10. It was there held that the evidence as to the cause of the fright was such as to leave it a question for the jury, and we are satisfied with the holding in that case.

It is next contended in this case that the court erred in its instructions to the jury. We have carefully examined these instructions, and find no reversible error in the action of the court in respect thereto.

Other errors are assigned which we do not deem of sufficient importance to require special mention.

Upon the whole record, we think the case ought to be affirmed, and is *Affirmed.*

LADD, C. J., and DEEMER and WITHROW, JJ., concur.