IOWA SAVINGS BANK, Appellee, v. A. CHRISTENSEN, Appellant.

**BILLS AND NOTES:** Discharge—Payment Without Production of 1 Note. The maker of a promissory note who makes payment to a party connected as manager with the original payee, without the production of the note, must, under a plea of payment, show express or implied authority in said party to receive payment on be-

half of the real owner; and especially is this true when the maker knows that said note had been transferred.

**PLEADING: Amendment—Supplying Omitted Allegation.** A motion by defendant to set aside a judgment and dismiss the action because plaintiff makes no allegation of its corporate capacity is properly met by an amendment supplying the omitted allegation.

Headnote 1:  8 C. J. pp. 595, 1016.  Headnote 2:  14a C. J. p. 849.

*Appeal from Webster District Court.*—G. D. THOMPSON, Judge.

MARCH 21, 1925.

REHEARING DENIED. JUNE 25, 1925.

SUIT on a promissory note. There was a plea of payment. The court directed a verdict for the plaintiff for the full amount due on the note, and the defendant appeals.—*Affirmed.*

*Lovrien & Lovrien* and *Healy & Breen,* for appellant.

*Horace Van Metre* and *Frank Maher,* for appellee.

FAVILLE, C. J.—I. In the year 1920, appellant was engaged in the implement business in Humboldt. It appears that at said time there was a concern known as the Universal Hog Waterer Company, engaged in the manufacture of hog waterers, in the city of Fort Dodge. This company appears to have been managed by one Welch. In June of 1920, Welch sold certain hog waterers for the Universal Hog Waterer Company to appellant, and received in payment therefor the note of appellant for $484, payable to the Universal Hog Waterer Company, and due November 1, 1920. A short time thereafter, appellee purchased said note. About the time of its maturity, appellee notified appellant that it held the note. No response appears to have been made to this notice; and thereafter the cashier of appellee called the attention of Welch to the fact that the note was past due, and asked him if he would see appellant about it. It appears that thereafter appellant paid $100 on said note by giving a check for the said amount to Welch, the check being

*1. BILLS AND NOTES: discharge: payment without production of note.*

payable to the Universal Hog Waterer Company, and gave a new note payable to the Universal Hog Waterer Company for the balance due on the original note. This transaction took place in the office of appellant at Humboldt, and was conducted by Welch. This note and money Welch turned over to appellee. Appellant thereafter received the old note from Welch. The appellee later notified appellant that it held the new note. At the time this note became due, Welch again called upon appellant, who paid him $50 by a check drawn to the Universal Hog Waterer Company, and gave a new note of $341.60. This note ran to the Universal Hog Waterer Company, and was due on or before August 1, 1921. This is the note upon which this suit is brought. Shortly after the giving of the note in suit, Welch came to the appellant's place of business at Humboldt, and bought some automobile tires, and gave appellant a receipt for $157 to be applied upon the note in suit; and again on March 19th, Welch called upon the appellant, at Humboldt, and received from him some hog waterers and oilers which appellant had bought, and gave appellant a receipt therefor for $159. On April 1st, appellant gave to Welch a check for $50, to apply on the note.

It appears, at least inferentially, that, during the time these last payments by money and property were made by appellant to Welch, the latter had possession of the new note that had been signed by appellant, and that he had not yet delivered the same to the bank. On April 2d, Welch delivered the note to the bank, in lieu of the previous note that had been there. No indorsements were made upon the note, of the payments that had been made by appellant. There is no claim that the bank knew of such payments. A short time after this, Welch was killed. The note was indorsed by the hog waterer company, by Welch as manager.

The theory of appellant, upon the trial of the case, was that he had paid the note in suit in full by the payments in property and money that he had made to Welch, and that Welch was the agent of appellee in receiving the same. The holding of the trial court upon the motion for a directed verdict in favor of appellee was, in effect, a holding that appellant had failed to produce evidence sufficient to take to the jury the question as

to whether or not Welch was the agent of appellee in conducting the transactions respecting the payments claimed to have been made by appellant upon the note in suit.

It appears without conflict in the evidence that, after the first note was sold to appellee, it notified appellant that it owned the note; and, receiving no response from appellant, the cashier of appellee bank called the attention of Welch to the fact that the note was past due, and suggested that he see appellant about it. Thereafter, Welch did see appellant, and procured from him the cash payment and the new note, and delivered them to appellee. After Welch had done this, the note then in the possession of appellee was canceled and delivered to Welch, who subsequently returned it to appellant.

Subsequently, the same proceeding was had in regard to the second note, except that the renewal, being the note in suit, was held by Welch until after the property and money described had been delivered to him; and no indorsement of payment was made on said note.

It is to be noticed that neither of the notes was placed in the hands of Welch for collection. The officer of the bank did inform Welch that the notes were unpaid as they came due, and advised or requested Welch to see appellant about the payment. There is, however, no evidence that appellee vested Welch with any authority to collect anything on the notes. Welch later came to the bank, in each instance, with a new note signed by appellant, and turned in certain cash payments; but there is no evidence that the bank officers were even informed that the money so paid came from appellant, rather than from Welch, who had transferred the note to the bank. Appellee accepted the new note and the cash so paid, and surrendered the old note to Welch. In any view of the case, there was no evidence that Welch had any authority to accept hog waterers and automobile tires or anything except money in payment of appellee's note. Nor can any such authority be implied from the conduct of the parties or anything in the case.

The ultimate question in the case at this point is whether Welch was the agent of appellee and acting for it in receiving from appellant the automobile tires and other property and money after the note in suit had been executed. At the time

these payments were made in this manner, appellee still owned the prior or second note of the series, and it was still in its possession. Appellant had already delivered the note in suit to Welch, who still held it, and who subsequently transferred it to the bank. The former note was past due, and appellant had been notified that it belonged to the bank. It is obvious that Welch was interested in having the note paid by appellant. Could appellee have maintained an action against Welch, under this record, for the value of the property so turned over to him by appellant, or could it have required him to account to the bank for the cash payment so made, or sued him for recovery of the note executed by appellant and payable to the hog waterer company, then in the hands of Welch? We think it is clear that it could not have maintained any such suits against Welch as its agent, or otherwise.

There is no evidence in the record upon which a finding of express authority on the part of Welch could be based; and there is no sufficient evidence of implied authority on the part of Welch to act as agent for the bank in the matter of receiving payments and collection, to take the case to the jury. Furthermore, appellant was fully advised and notified that appellee was the owner of the original note and the renewal thereof, and that payments should be made to appellee therefor; and the original note remained in the possession of appellee, and was not intrusted to Welch or delivered to appellant until after the bank had accepted the second note and the payment made.

We are of the opinion that the trial court did not err, under the facts, in holding that there was no sufficient evidence that Welch was the agent of appellee, to take the case to the jury; and that the evidence of the delivery of the property and money to Welch while appellee was the owner and holder of the note of appellant, and before it acquired title to the note in suit, was unavailable to appellant as proof of payment upon the note in suit. The court, therefore, did not err in directing a verdict in behalf of appellee at the close of the testimony in the case.

In *Tappan v. Morseman,* 18 Iowa 499, we said:

"The law justly attaches great importance to the possession of a note by an agent, as showing his authority, and equally great importance to the want of possession, as evidence of a

want of authority.  (Dunl. Pal. on Agency, 274, 275, notes and cases there cited.)  So that it may be laid down as the general rule that, if a debtor owing money on a *written security* pays to or settles with another as agent, it is his duty, at his peril, to see that the person thus paid or settled with is in possession of the security.  If not thus in possession, the debtor must show that the person to whom he pays or with whom he settles has special authority, or has been represented by the creditor to have such authority, although for some reason not in possession of the security.''

See, also, *Security Company v. Graybeal,* 85 Iowa 543.

Inasmuch as, during these transactions; Welch did not have the note held by the bank in his possession, the burden of proof was undoubtedly upon appellant to show his authority, either actual or implied, to act for appellee.  This is especially so when appellant had previously been notified that appellee was the owner and holder of the note.  *Security Company v. Graybeal,* supra; *Harrison v. Legore,* 109 Iowa 618; *Richards v. Waller,* 49 Neb. 639 (68 N. W. 1053).

In view of our holding that the proof is insufficient to take to the jury the question as to whether or not Welch was the agent of appellee, other questions argued by appellant regarding the admission of evidence and the competency of a witness are immaterial.

II.   The verdict was returned on the 8th of November, 1923, and judgment immediately entered on the verdict.   On November 12th, appellant filed a motion to set aside the judg-

2. PLEADING: amendment: supplying omitted allegation.

ment and dismiss the case, for the reason that the pleading filed by appellee did not allege the corporate capacity of appellee, and did not show that it was entitled to maintain the action.  On November 15th, appellee amended its petition, setting forth its corporate capacity; whereupon appellant filed a motion to strike said amendment, for the reason that the same was filed too late, and that, at the time the said amendment was filed, there was no cause of action pending in which the pleadings could be amended.  The court permitted the amendment to be filed, and overruled appellant's motion to strike the same.

In *Andre v. Chicago & N. W. R. Co.,* 30 Iowa 107, the peti-

tion did not describe the defendant as a corporation, and a motion in arrest of judgment was based upon this defect. We said:

"It may be that this objection would have been sustained upon demurrer * * * but, after answer, trial and verdict, it cannot be urged. Defects of this character, whereby the substantial rights of the parties are not affected, are not sufficient grounds for the arrest of judgment, or reversal thereof in this court."

See, also, *Stokes v. Gollmar Bros.*, 163 Iowa 530.

We think that the trial court did not abuse its discretion in permitting the amendment to be filed, and in refusing to strike the same, and that no prejudice resulted to appellant from such ruling.

We find no error. The judgment of the district court is, therefore,—*Affirmed*.

EVANS, ARTHUR, and ALBERT, JJ., concur.