HART-PARR COMPANY, Appellant, v. CITIZENS SAVINGS BANK OF LOW MOOR, Appellee.

**PRINCIPAL AND AGENT:** Authority—Proof Through Acts and Conduct. Principle reaffirmed that agency may be established by a showing that the claimed principal has so acted as to reasonably warrant the presumption that another is his agent for general or specific purposes, whether it be in a single transaction or in a series of transactions. So held where the matter in issue was as to the conditions attending the payment of a certificate of deposit.

Headnote 1:  2 C. J. pp. 461, 576.

*Appeal from Clinton District Court.*—D. V. JACKSON, Judge.

DECEMBER 11, 1924.

REHEARING DENIED MARCH 21, 1925.

ACTION on a certificate of deposit issued by the defendant bank to the plaintiff. Certain defenses were interposed by the defendant, which are fully discussed in the opinion. The jury found in behalf of the defendant, judgment was rendered on the verdict, and the plaintiff appeals.—*Affirmed.*

*Ernest Hausberg* and *George B. Phelps,* for appellant.

*Skinner & Petersen Law Co.* and *A. L. Schuyler,* for appellee.

FAVILLE, J.—Appellant is a corporation, located at Charles City, Iowa, and its principal business is the manufacture of tractors. It disposes of these tractors-through what are known as "distributors," who in turn dispose of them to dealers, by whom they are sold to the ultimate purchaser. One Bert Aston,

at Cedar Rapids, or the Bert Aston Company, was known as such a distributor, and Harry Eaton was the local dealer at the town of Low Moor.

It appears from the record that appellant conceived a scheme to promote the sale of its tractors, by depositing certain funds of said company in local banks, taking a certificate of deposit therefor, and thus permitting said banks to loan money to the local dealers with which to purchase tractors from appellant for the sale to their customers. In the fall of 1920, Aston took up with Eaton the proposition of securing the latter to act as a local dealer in Low Moor, in the eastern part of Clinton County. At the solicitation of Aston, Eaton went to Charles City, and looked over the plant of appellant, and talked with various ones of its officers and officials. On or about December 8, 1920, appellant wrote to appellee, as follows:

"Gentlemen: We have decided on a policy of depositing money in our local dealers' banks to finance the sale of our tractors in their communities. We are going to appoint an authorized Hart-Parr depository in every Hart-Parr dealer's town. Our plan, roughly, is that we will deposit our money and take time certificates at the rate of four per cent interest, such a certificate maturing in not to exceed one year. One of the fundamental errors of our present economic system has been that the manufacturers sell in your community merchandise and take the money out before the merchandise has been able to pay any returns. By spreading our deposits all over the United States and depositing our money where we procure business, it makes a more prosperous community for you, our tractor produces wealth and it also solves the present economic problems of the smaller banks' not having sufficient funds to finance their customers. Under our plan, the more tractor business our dealer does, the more profits his banker makes. There is a small accommodation fee we charge our dealer, but this does not come out of his regular profits, as our tractor is so priced as to include the fee for financing time sales. No doubt, among your customers, there is a dealer, who has demonstrated his ability to sell a quantity of tractors, or you have among your acquaintances men who are interested in getting into a high grade business, such as the selling of Hart-Parr tractors. The Hart-Parr

dealer's contract is a very valuable contract for the right kind of dealer, and as we are founders of the tractor industry, the right dealer with the Hart-Parr tractors will be able to dominate the tractor business in his community.   It is of mutual benefit that the best dealer in your community have the Hart-Parr contract and become a customer of yours.   If you have in mind such a dealer whom you can recommend to us, we suggest that you get in touch with him at once, tell him in a general way our plan, determine the amount of money he will need to finance his tractor sales, let us know at once about it, and we will have one of our representatives call on you and go into the matter in detail.   There is no red tape about our depositing money.   If you become the authorized Hart-Parr depository, and money is needed quickly, when authorized you can draw sight draft on us for the amount needed, accompanying such draft with your certificate of deposit, and the proof that the money is to be used in financing the sales of Hart-Parr tractors.   Thanking you for your interest, and hoping we can work together for mutual profit and satisfaction, we remain

"Very truly yours, Hart-Parr Company, Founders of the Tractor Industry.   W. S. Fredrickson, General Sales Manager."

It is conceded that Fredrickson was the general sales manager of appellant company.

Thereafter, Aston and Eaton had a meeting, by which an arrangement was entered into, under which Eaton gave his note to appellee bank for $5,000, and at or about the same time, the bank drew on appellant for said sum of $5,000, by sight draft, which was duly honored, and for which the bank issued to appellant its certificate of deposit.   On January 17, 1921, Aston wrote appellee as follows:

"Gentlemen:  With reference to the note of five thousand dollars signed by Harry Eaton covering four Hart-Parr thirty tractors for which you hold bill of sale.  It is understood said tractors shipped in to supply local dealer at Low Moor or to be transferred to other agents by Mr. Eaton or ourselves in which case proceeds of said transfers shall be applied on above mentioned note.  Upon maturity of this note if tractors are not sold we will redeposit equal amount of balance due on note said de-

posit to draw four per cent per annum and to run not to exceed six months. And of said deposit if tractors are not sold we will transfer the same to other agents and use the proceeds to take up note in full. Thanking you for courtesies shown Mr. Eaton we wish to remain,

"Yours truly, The Bert Aston Company, Bert Aston, General Manager."

On November 1, 1921, appellant wrote appellee as follows:

"Gentlemen: The enclosed pamphlet describes our new deposit plan, which is our latest type of co-operation with our dealers and their bankers. In reading this pamphlet you will note that there are several changes over the plan that we have been using. These changes are made with the idea in mind to improve and increase our co-operation with our dealers' organization in selling tractors. Study this new plan. Tell us what you think of it. While we are getting many complimentary remarks from banks all over the country, we would appreciate at this time a letter from you advising what you, as a progressive banker, think of same. We appreciate your past co-operation, and the agreements pertaining to any present deposits will be carried out in accordance with the provisions under which deposits were originally made. This new plan goes into operation on financing of additional tractor shipments.

"Awaiting your further commands, we are
"Yours truly, Hart-Parr Company," etc.

The cashier of the bank replied to this, under date of November 26, 1921. Further correspondence passed between the parties, which it is unnecessary that we set out at this time. On December 16, 1921, appellant wrote appellee as follows:

"Gentlemen: We have yours of the 10th enclosing us endorsement extending the time of bond on our deposit soon to mature in your bank. Certificate covering this deposit will be presented in the regular way and should be paid by you. After being paid, this letter is your authority to draw draft on us through the Security Trust & Savings Bank, this city, attaching to this draft your certificate for five thousand dollars, due in six months drawing four per cent interest and dealer's accommodation check for one hundred dollars. Dealers receive refund on

tractors carried over only on condition that they take from us a like sized tractor for every tractor on which refund is made. This means that Mr. Eaton must get out and beat the brush and not only clean the tractors he has on hand, but in addition sell a like number before June first. We appreciate very much the co-operation you have given us in the past.

"Yours truly, Hart-Parr Company," etc.

The final and important question in this case is whether or not appellant, either by itself or through any agent, entered into an agreement with appellee to the general effect that the amount due on the certificate of deposit would not be claimed from appellee unless the note of the local dealer for like amount to appellee was paid. It is the contention of appellee that the note of the local dealer, Eaton, to appellee had not been paid. This seems to be conceded.

The question at this point turns upon the proposition as to whether Bert Aston, or the Aston Company, was the authorized agent of appellant, with power to bind it in respect to the agreement that the money in question should be deposited with appellee and that the certificate should not be paid unless the dealer in said town (Eaton) was able to sell tractors and to pay his note, which was given to the bank for the purpose of borrowing money with which to buy said tractors.

It is strenuously insisted by appellant that Aston was acting only for himself, or for the so-called Aston Company, and that he had no authority to bind appellant by anything he said or did in connection with the said matter. We are of the opinion that appellant places too narrow a construction upon the evidence in respect to this matter. In *Grant v. Humerick*, 123 Iowa 571, we said:

"That an agency may be implied or presumed from the conduct of the parties, no one will deny; and it is a general rule that, where a party has so acted as to reasonably warrant the presumption that another is his agent for general or specific purposes, 'whether it be in a single transaction or in a series of transactions, his authority to act for him in that capacity will be conclusively presumed,' so far as it may be necessary to protect third persons who have acted in good faith and with reasonable prudence."

The rule is generally recognized.

It is unnecessary that we review in detail the evidence in the case upon which the jury was authorized in reaching the conclusion that appellant was bound by the representations made; but it is sufficient to state that there was evidence in the case that tended to establish an agency on the part of Aston that would bind appellant. In other words, there was evidence that he was acting for appellant and with its authority, in making certain representations to appellee bank. Furthermore, there was sufficient evidence in the record to carry to the jury the question as to whether or not appellant, with knowledge of what had transpired, ratified and confirmed the contract that had been made by Aston and appellee.

We are impressed with the vigor and ability with which counsel argues the question of the failure to establish an agency, as claimed; but we are persuaded, from an examination of the entire record, that there was sufficient evidence to carry the case to the jury, and that the court properly instructed the jury in regard thereto.

We find no error of law in the case that would require interference on our part, and it therefore follows that the judgment is—*Affirmed.*

ARTHUR, C. J., and EVANS and PRESTON, JJ., concur.