T. J. SHOEMAKER, Administrator, Appellant, v. N. A. RAGLAND et al., Appellees.

**BILLS AND NOTES:** Assignment—Payment Without Production of Note.  The maker of a promissory note secured by mortgage who pays the same to the payee-mortgagee without requiring the production and surrender of the note does so *at his peril,* even though the record reveals no assignment of the note and mortgage, such maker not being a subsequent purchaser, within the meaning of the recording acts.

**BILLS AND NOTES:** Payment—Implied or Inferred Agency.  The *assignee* of a promissory note who receives numerous payments of principal and interest from the original payee, with knowledge that such payments had been made to such payee by the makers of the note, thereby impliedly constitutes such payee his agent to receive such payments.

STEVENS and FAVILLE, JJ., dissent as to the sufficiency of the evidence.

Headnote 1:   8 C. J. pp. 593, 598, 600; 41 C. J. pp. 671, 698, 699, 700.
Headnote 2:   8 C. J. p. 596; 41 C. J. p. 698.

Headnote 1:   3 R. C. L. 1289.   Headnote 2:   21 R. C. L. 19, 20.

*Appeal from Marshall District Court.*—JAMES W. WILLETT,
Judge.

## DECEMBER 14, 1926.

Action to foreclose real estate mortgages, and for personal
judgment against the makers of two promissory notes secured by
said mortgages. The opinion states the essential facts. The de-
cree entered determined the equities in favor of the defendants.
—*Affirmed.*

*C. H. Van Law* and *James H. Van Law,* for appellant.

*F. E. Northup* and *Robert E. Johnson,* for appellees.

DE GRAFF, C. J.—Plaintiff, T. J. Shoemaker, as adminis-
trator of the estate of J. H. Augustine, commenced this action
to foreclose two real estate mortgages executed by the defend-

1. BILLS AND
NOTES: assign-
ment: payment
without produc-
tion of note.

ants, N. A. and Gertrude Ragland, husband and
wife, to J. D. Plumb, and assigned to Augustine.
The chronology of the case material to the prop-
ositions involved on this appeal is as follows:

On the 22d day of March, 1917, the defendant N. A. Rag-
land became seized in fee simple, by deed of bargain and sale,
executed by one Grover C. Duncan, of a certain parcel of real
estate described as Lot 166 in Melrose Park, an addition to the
original town of Marshall, Marshall County, Iowa.

On March 19, 1918, defendant N. A. Ragland and his wife,
Gertrude, executed to J. D. Plumb two mortgages in the sum of
$1,000 and $500, respectively, on said real estate, and on the
same date executed and delivered to the said Plumb their two
joint and several negotiable promissory notes, as evidence of the
loan secured by said mortgages. The $1,000 note was payable
March 19, 1921, with interest at 7 per cent. The $500 note
was payable March 19, 1920, with interest at 7 per cent.

On the 29th day of March, 1918, the mortgagee Plumb transferred, by indorsement in blank, the $1,000 note, and assigned in writing to J. H. Augustine the mortgage securing said note. On the 18th day of May, 1918, the said Plumb transferred by indorsement in blank, the $500 note, and executed an unsigned assignment to J. H. Augustine of the mortgage securing said note. Both assignments were acknowledged by J. D. Plumb before a notary public in and for Marshall County, but neither assignment was placed on record in the office of the county recorder, nor was either assignment entered or noted upon the record of the mortgage. Each of said notes has indorsed thereon the following:

"For value received I hereby guarantee payment of the within note and waive demand and notice of protest on same when due. [Signed] J. D. Plumb."

On December 24, 1921, J. H. Augustine died. In January, 1922, after the appointment and qualification of the plaintiff as administrator of the estate of J. H. Augustine, the notes, mortgages, and assignments were found by the administrator among the personal effects of the decedent; and on October 13, 1923, the administrator commenced the instant action. Plumb died subsequently to the death of Augustine, and prior to the commencement of this action by the administrator.

The defendants, in answer to the petition of plaintiff, admitted the execution of the notes and mortgages in question, but denied, on information and belief, that the said mortgages and notes were assigned by J. D. Plumb to J. H. Augustine, and further pleaded that, if said mortgages were in fact assigned, said J. H. Augustine fraudulently refrained from causing said assignments to be recorded, and acted in collusion with the said J. D. Plumb for the purpose of avoiding taxation and for the purpose of prejudicing the rights of these defendants; and that the defendants have voluntarily and in good faith caused the said notes and mortgages to be paid; that J. D. Plumb was the agent of J. H. Augustine for the purpose of collecting and receiving payments from these defendants; and that, having so constituted and appointed said Plumb as his agent, the plaintiff is estopped from claiming or asserting that payments made by the defendants to J. D. Plumb, as the agent of the said J. H.

Augustine, were not, in fact, payments made to J. D. Plumb as the agent of the said J. H. Augustine.

There are two primary defenses to this action, which in interrogative form are: (1) Does it avail the defendant to contend that the assignments of the mortgages are within the purview of Section 10105, Code of 1924? (2) Does the evidence establish the plea of estoppel, based on the agency of Plumb, thereby making payments by mortgagor to Plumb payments to Augustine?

I. It must be conceded that the transfer of a note secured by mortgage carries the mortgage with it. *State v. Gibson,* 199 Iowa 377; *Robertson v. U. S. Live Stock Co.,* 164 Iowa 230. We are not concerned in this case with the *bona fides* of the plaintiff as a holder in due course. No such issue is involved. The plaintiff was in possession of a duly indorsed note, and the profert of the same upon the trial established a prima-facie case. *Bigelow v. Burnham,* 90 Iowa 300; *Farmers & Traders St. Bank v. First Nat. Bank,* 201 Iowa 73.

The first question to determine is whether the defendants are entitled to the protection of Section 10105, Code of 1924, which provides that no instrument affecting real estate shall be of any validity against a subsequent purchaser for value, without notice, unless filed in the office of the recorder of the county in which the real estate is situated.

It is true that we have no statute which, in express terms, requires the recording of assignments of mortgages either of real or personal property, but it has very frequently been held that, as to the former, an unrecorded assignment will be void, in favor of subsequent purchasers and existing creditors without notice. *Central Tr. Co. of Illinois v. Stepanek,* 138 Iowa 131, with cases cited. This principle, however, finds application only when a subsequent purchaser for value, without notice, is the party invoking the rule. It is urged, however, by the appellee in the case at bar that, in the absence of a record of an assignment of the mortgage or of the transfer noted upon the record of mortgage, the mortgage is presumed to be owned by and controlled by the mortgagee, and that all men may deal with the mortgage or the land, resting upon this presumption, in the absence of actual knowledge of the assignment of the

mortgage. In support of this proposition, *Parmenter v. Oakley,* 69 Iowa 388, is cited.

The proposition affirmed by appellee must be read in the light of the facts of any given case. It is true that the same reason exists to require the assignee of a mortgage to record the assignment, as to require the mortgagee to record his mortgage, but in each case it is a subsequent purchaser for value, without notice, that is within the contemplation of the rule.

The law is well settled in this state that the payment of a negotiable promissory note to a person other than the owner or his agent is at the debtor's risk. See *Shoemaker v. Minkler,* 202 Iowa 942, with cases cited; *Farmer, Thompson & Helsell v. Bank of Graettinger,* 130 Iowa 469.

The defendants, under the instant facts, cannot be viewed as subsequent purchasers for value, within the meaning of Code Section 10105.

II.   Do the facts and circumstances sustain the appellee's plea of estoppel, in that the assignor Plumb was the agent of his assignee Augustine in the instant transaction? If this plea is sustained by the evidence, then the equities of the cause are with the defendant-appellee.

2. BILLS AND NOTES: payment: implied or inferred agency.

The doctrine of estoppel is well recognized in the law of agency. It is frequently applied. It must be based on facts for which the principal is responsible. It is a question of fact, to be determined by the facts and the reasonable inferences to be drawn therefrom. The authority need not be expressly conferred, and in the majority of cases it is informally conferred, or is inferred from the acts and conduct of the principal. The important thing is to find the assent of the principal, either express or implied. See *Harrison v. Legore,* 109 Iowa 618.

An agent may take the initiative, and perform services which the principal may accept. This is as binding on the principal as though the principal took the initiative and requested or directed the agent to act. The doctrine of agency by implication from acts or conduct runs through judicial decision, and finds expression in the textbooks of all writers on the subject of agency. Acquiescence in the doing of the act at the time, or subsequent acquiescence in the act as done, especially if it evi-

dences a course of conduct, may show the necessary assent or consent to bind the principal. Mechem says:

"It may be *tacit* or unexpressed in terms. It is often said that 'silence gives consent,' but this is by no means always true. It is only true when from the failure to speak, under the circumstances, an inference of assent may fairly and reasonably be drawn. This is usually a question of fact." Outlines of Agency (3d Ed.), Section 102.

It is also recognized that, where the acts are several in number or in frequency, until they indicate a course of conduct or a continuing purpose, the probative force is increased, so that it may reasonably justify an inference of assent to the act in question. Therefore, although no authority has actually been conferred, the principal will not be permitted to deny it, where by his conduct he has asserted it, if such denial would prejudice an innocent third person.

In the case at bar, it is undisputed that the defendants did make payments of interest and principal to the mortgagee. The evidence is undisputed that plaintiff's decedent did receive said interest payments regularly on the notes secured by the mortgages in question, until Augustine's death. No demand was made or notice given to defendants by the administrator until October, 1923, 22 months after his appointment as administrator.

The instant administrator testified that, after his appointment in December, 1921, he did not know, until August, 1923, that Mr. Ragland *kept on paying* J. D. Plumb, and that during this time he (administrator) was carrying on negotiations with Plumb for renewing or taking up the paper. At that time, Plumb was living in Marshalltown, and was reputed to be solvent.

There were some 30 similar transactions had between Plumb and Augustine, involving the notes and mortgages of different persons.

The administrator knew, shortly after his appointment; that Augustine had been receiving the regular interest payments, and knew that Plumb had been making them to Augustine. There is no evidence of denial that plaintiff's decedent did receive the payments on the principal made to plaintiff's assignor. It is admitted by plaintiff that the indorsements of interest payments on said notes were in the handwriting of Augustine. There

was no default during Augustine's life, nor is it shown that plaintiff's administrator ever claimed a default. The assignee received the interest payments from Plumb, his assignor, with full knowledge of the source of the payments, to wit, from the mortgagor. There would be no presumption or inference that Plumb was making gratuitous payments, or that said payments were made by Plumb as a guarantor of the notes. A guarantor is not liable for the payment of a note until the default of the maker. Augustine consistently and repeatedly received the interest from Plumb, and it would be most unusual conduct on the part of a guarantor, as such, to make regular interest payments or to make partial payments without any demand by the holder against the maker. Furthermore, Plumb could become liable for the interest only when he became liable for the principal. Augustine concealed his ownership of the notes and mortgages, and he knew that the makers did not know that Plumb had parted with the notes. All of these parties lived in the same town, and, under the circumstances of this case, Augustine knew that Plumb was collecting the interest regularly on the notes and bringing it to him. Augustine thereby made himself an undisclosed principal to Plumb, as his agent. He must have known also that the maker of the note was just as likely to pay Plumb the principal on the mortgages as he was to pay the interest, and, for aught that appears, Plumb may have paid Augustine the principal.

We cannot escape the conclusion that Augustine intentionally withheld from the makers all knowledge of the transfer of the notes, knowing all the time that Plumb was collecting the interest and bringing it to him, and thereby using Plumb as a means to an end. His motive becomes material, under the facts in this case.

Intentional concealment on the part of Augustine amounts to an affirmative fraud on his part, and a court of equity should not wink at such a transaction. The eyes of the chancellor never look obliquely, and when the blush comes to his cheek, he is ready to act.

Under the facts and circumstances of this case, the equities are with the defendant-mortgagors. The decree entered by the trial court is—*Affirmed.*

EVANS, ALBERT, and MORLING, JJ., concur.

STEVENS and FAVILLE, JJ., dissent to Division II.

STEVENS and FAVILLE, JJ. (dissenting). We dissent to Division II for the reason that we fail to find from the record any sufficient or legal evidence to justify a conclusion that any agency was established.