W. H. KANN, Appellant, v. THOMAS J. FISH et al., Appellees.

No. 39322.

APRIL 2, 1929.

REHEARING DENIED NOVEMBER 22, 1929.

*G. W. Hunt,* for appellant.

*W. S. Hart,* for Thomas J. Fish, appellee.

*Lees & Bunge* and *Burt Hendrick,* for Old Line Life Insurance Company, appellee.

MORLING, J.—The Clayton County State Bank is located at Guttenberg, Iowa, which is about 70 miles from Waukon. One D. J. Murphy was an attorney and loan agent located at Waukon. The appellant is engaged in the general merchandising business at Guttenberg, and is a stockholder and director in the Clayton County State Bank. He has had no connection with the active management of said bank. At various times when the appellant had money to loan, he applied to said bank for a real estate loan, which was furnished him by the bank. In June of 1912, the appellant applied to the cashier of said bank for a desirable real estate loan in the amount of $3,000. The bank undertook to secure such a loan, and thereafter the bank presented the appellant with the note and mortgage in suit, executed by the appellee Fish, for said sum of $3,000, and the appellant gave to the said bank his check for $3,000 in payment thereof. It afterward transpired that there was an error in the description in said mortgage, which was corrected by the execution of a new mortgage, and the original mortgage was satisfied of record by the bank. The new mortgage bore date July 15, 1913, and was recorded September 27, 1913. The mortgage was duly assigned to appellant by the said bank on October 25, 1913. This assignment, however, was not recorded until October 26, 1925, and the appellee Fish had no notice or knowledge that the appellant owned said mortgage, prior to said date. The note and mortgage were due June 18, 1917. No formal extension appears to have been made by the execution of any new instrument, but the note and mortgage were carried and the interest thereon was paid by the appellee Fish. It is the contention of the appellees that Fish paid said note and mortgage in full on or about February 6, 1922. Briefly stated, Fish claims that he paid the amount of the note and mortgage to Murphy, and that Murphy was at said time the agent of the Clayton County State Bank, authorized to receive said payment, and that said bank was the agent of the appellant, and bound by the payment to Murphy.

In regard to the original transaction between Fish and Murphy, it appears that Fish applied to Murphy for a loan of $3,000 upon his real estate, and Murphy drew up the note and mortgage

running to the Clayton County State Bank, and Fish executed the same, and subsequently received the $3,000 from Murphy. Thereafter Fish paid the interest on said note and mortgage to Murphy each year, and there is evidence to the effect that, when he paid the first installment of interest, he was told by Murphy that the mortgage belonged to someone in Guttenberg. Each time that Fish paid the interest to Murphy from 1912 to 1921, Murphy gave him a receipt therefor.

In February of 1922, Fish desired to obtain a new loan, by means of which he could retire the $3,000 loan in question and also another loan then upon his farm. He applied to Murphy to secure this new loan for him, and Murphy obtained the same from the appellee Old Line Life Insurance Company, the amount of the loan being $10,500. Fish paid Murphy a commission of $500 for procuring said loan. It is the contention of the appellees that the proceeds of this loan were used in part to pay the note and mortgage of the appellant. In regard to said transaction, it appears that a written application for the loan was made to the appellee insurance company, which disclosed the outstanding mortgage of $3,000 standing in the name of the Clayton County State Bank, and another mortgage to one Waterman. Abstracts which were furnished to the insurance company also showed said mortgages to be outstanding against the property. Fish executed the papers for a new loan to the insurance company, and the same were received and recorded by said company in January, 1922. Thereupon the insurance company sent the amount of said loan, $10,500, to the Peoples National Bank of Waukon, instructing said bank to see that the two mortgages outstanding against said land were paid out of the proceeds of said loan. Thereupon the Peoples National Bank of Waukon credited the said $10,500 to the account of Fish in said bank, and instructed him to pay to Murphy the said $3,000 mortgage which stood of record in the name of the Clayton County State Bank. Thereupon Fish went to Murphy, and wrote a check on the Peoples National Bank, payable to Murphy, for the amount of said mortgage, and delivered the same to Murphy. This was on or about February 6, 1922. Fish did not receive said note and mortgage from Murphy at the time of said payment, nor demand the same. Murphy did not have them in his possession. Murphy gave him a receipt for the money. Thereafter the abstract was returned to Murphy

by the insurance company, for the purpose of having it brought down to date, and Murphy caused said abstract to show that the said $3,000 mortgage had been satisfied by the Clayton County State Bank and returned it to the insurance company. No remittance was made by Murphy for the said loan to the Clayton County State Bank or to the appellant.

In regard to the claimed agency of Murphy, it also further appears that, at the time involved in these transactions, the Clayton County State Bank made many loans on real estate in the vicinity of Waukon, amounting to several hundreds of thousands of dollars. Practically all of this business was transacted through Murphy. The record shows that, in making said loans, the Clayton County State Bank relied upon Murphy's statement as to the value of the security and the responsibility of the borrower. The papers were drawn up by Murphy in his office at Waukon, and the bank supplied Murphy with blanks for that purpose. The record shows that, during this period of dealing, for practically twelve years, Murphy collected principal and interest due on loans that had so been made by the Clayton County State Bank, and remitted to the bank therefor. When principal or interest became due on such loans, the bank notified Murphy in regard thereto, and he would dun the borrower and collect and remit to the bank. The bank did not notify the borrowers directly in regard to said loans. Murphy did not always forward the money so collected from each borrower separately, but sometimes let an amount accumulate, and forwarded payments from several borrowers in one check. On or about September 1, 1920, Murphy executed a bond to the Clayton County State Bank in the penal sum of $50,000, with sureties, the bond reciting that Murphy had made loans for said bank, and may make loans in the future, and providing that all of the loans made by Murphy for said bank, commencing on the first day of January, 1914, and ending on the first day of September, 1925, should prove collectible and good and satisfactory to said bank. It also appears that the officers of the Peoples National Bank at Waukon knew that Murphy had made collections in that locality for the Clayton County State Bank, and the officer of said Peoples National Bank having charge of said transaction believed that Murphy had authority to accept payment of mortgages which were payable to the Clayton County State Bank. It also appears that, when

Murphy made remittances to the Clayton County State Bank for loans held by said bank, the bank would send the papers to Murphy for delivery to the borrower. The vice president of the Peoples National Bank testified that he knew of Murphy's having signed "lien-holders' acceptances" which provided that the Clayton County State Bank would accept money due it on loans. He said: "I don't know of anything else he ever signed for them." In this connection, the cashier of the Clayton County State Bank testified that the bank sometimes had requests from Murphy to accept payment of loans before they were due, and granted such requests, but that he had no knowledge of Murphy's ever having signed any "acceptances" or anything of the kind. There was no correspondence preserved between Murphy and the bank with respect to said loans, separate from the files containing the loan papers.

We are therefore confronted with a situation where the debtor, Fish, voluntarily paid the amount of his debt, evidenced by a note and mortgage, to one who was not the payee, and who did not have possession of said instruments, and made such payment without making any request or demand for the production or surrender of the papers. The note and mortgage were not made payable at Murphy's office.

We think the case presents two determinative propositions:

1. With such acquiescence and by such ratification as were the equivalent of precedent authority, plaintiff clothed the Clayton County State Bank with apparent ownership of the mortgage paper. Murphy was the bank's agent for receiving payment. Payment was made to Murphy. Payment to Murphy was payment to the bank. Payment to the bank was payment to the one who, through plaintiff's conduct and acquiescence, was the apparent owner. Plaintiff is, therefore, estopped from asserting that payment to the bank was not payment.

2. The bank was plaintiff's agent. The bank was a corporation, and could act only through agents. Murphy was the bank's agent for receiving payment. Payment to Murphy was payment to the bank. The bank, in receiving payment, was acting within its authority as plaintiff's agent. Payment was, therefore, made to plaintiff.

Plaintiff became the owner of the original paper in June, 1912. In July, 1913, plaintiff was the owner of that paper. At

that time, though plaintiff owned the paper, plaintiff permitted the bank to hold itself out to Fish as the owner, and to take from Fish, as such owner, new paper payable to the bank. Fish thus made settlement with the bank as owner, understood the bank to be the owner, and thereafter paid interest to the bank as owner. Plaintiff necessarily knew that the bank had taken the new paper as owner, and was receiving the interest, and hence that Fish was paying the interest to the bank. As a reasonable man, he knew that Fish was dealing with the bank as owner. Plaintiff made no objection, gave no notice or warning to Fish. Plaintiff invested the bank with apparent ownership, and knowingly permitted the bank to deal with Fish, and Fish to deal with the bank, as owner of plaintiff's property. Plaintiff took an assignment of the mortgage from the bank in 1913. He had the power then to give constructive notice to subsequent mortgagees of his ownership. He knew that, when that loan would become due, Fish might want to negotiate a new mortgage. As will be seen, Fish did negotiate a new mortgage, which was taken by the new mortgagee, and the proceeds of which were paid in to the Peoples National Bank on Fish's account, and used in payment of plaintiff's mortgage to the holder of record, without actual or constructive notice of the assignment, which plaintiff willfully withheld from the record. This withholding was not for a few days or a few months. It was for twelve years, from October, 1913, to October, 1925. The mortgage was eight years past due when plaintiff put the assignment of record. During that time, he deliberately refrained from taking any action to give the mortgagor, or persons dealing with the property, notice that the bank, which appeared on the public records to be the owner, was not in fact the owner of the paper, or that plaintiff was the owner.

The paper was due in June, 1917. Fish had been paying his interest to, and plaintiff had been regularly receiving it from, the bank. Plaintiff knew that this interest was being regularly paid to the ostensible owner, and knew in June, 1917, and subsequently, that Fish could pay, and in the regular course of business would pay, the principal, and would naturally pay it to the bank, and particularly that a new mortgagee, discharging prior incumbrances, would pay the mortgage to the bank, as the ostensible owner, and the one to whom for five years the mortgagor had been making payments which had not been questioned.

For nearly five years after the maturity of the paper, plaintiff had permitted this condition of apparent ownership of the bank and the bank's apparent right to receive payment to remain, and Fish to be drawn into the act of making payments to the bank. For eight years after the maturity of the paper, plaintiff refrained from recording his assignment or from otherwise warning Fish. Plaintiff was a director in this bank. The bank was loaning hundreds of thousands of dollars about Waukon. The bank was 70 miles from Waukon. The bank was extensively engaged in making mortgage loans. Plaintiff cannot be permitted to stultify himself by saying that he did not know that the bank of which he was director was making mortgage loans generally, or that it was employing agents in that business. All of the loans made about Waukon, amounting to hundreds of thousands of dollars, were made through Murphy. Murphy was furnished by the bank with blank forms; Murphy took the applications from the borrowers; Murphy passed on the security and on the credit of the borrower; Murphy was given notice by the bank of the maturity of principal and of the maturity of interest. Murphy, pursuant to such notice, collected both principal and interest. Murphy accumulated these collections, and remitted them to the bank in bulk. Murphy in this manner transacted business for the bank of which plaintiff was a director for more than 12 years. The bank took a bond from Murphy. Murphy's agency was known by the Peoples National Bank. Fish's funds, obtained by Fish for the purpose of paying this mortgage, were deposited in the Peoples National Bank. That bank told Fish to pay this mortgage to Murphy. Fish, on this information and instruction, and on Murphy's apparent authority, did pay the mortgage to Murphy by check on the Peoples National Bank. The Peoples National Bank was informed of this check and of the purpose for which it was given, and with that knowledge paid out on the check Fish's funds.

I. Payment to Murphy was payment to the bank. The bank was by plaintiff clothed with the apparent ownership of the paper. The bank was the ostensible owner, and was permitted and, under circumstances shown here, impliedly directed by plaintiff to deal with the paper as its apparent owner, and to receive payment of principal and interest. Plaintiff is estopped from denying to Fish, who dealt with the bank on the strength

of such apparent ownership, the bank's title and right to receive payment. 21 Corpus Juris 1172 *et seq.,* 1176 *et seq.*

II. Agency may be created by express contract between the principal and agent, or may be created by implication. The bank was for years knowingly permitted by plaintiff to collect for him interest, and for nearly five years after maturity to deal with the principal, at least to the extent of permitting it to remain unpaid. It was through the acquiescence at least of the bank, and the continued receipt by the bank of the interest, that the paper was allowed to remain past due, and it was by the acquiescence of the bank that the paper was not paid during the period mentioned. The plaintiff necessarily knew of and acquiesced in these collections of interest by the bank for him, and in the action of the bank in permitting the principal to remain for years after maturity unpaid. The bank was, therefore, by implication the agent of the plaintiff generally, as well as specially, as to, and was authorized to deal with, this paper, both principal and interest. *Grant v. Humerick,* 123 Iowa 571; *Hart-Parr Co. v. Citizens Sav. Bank,* 199 Iowa 889; *Shoemaker v. Ragland,* 202 Iowa 947; *Dobbs v. Zink,* 290 Pa. St. 243 (138 Atl. 758); *Colonial Tr. Co. v. Davis,* 274 Pa. St. 363 (118 Atl. 312); 2 Corpus Juris 441; *Burlington Sav. Bank v. Prudential Ins. Co.,* 206 Iowa 475. Agency may be proved by circumstantial, as well as by direct, evidence. Idem. The bank was a corporation, and could act only through agents. There was no limitation upon the bank's authority to act for him through any particular person or any particular agent. The act of the bank, therefore, through agents, through whom it must act, and through whom it did act, and, through their acts, binding on it, is necessarily binding upon the plaintiff. *Killingsworth v. Portland Tr. Co.,* 18 Ore. 351, 355 (23 Pac. 66, 17 Am. St. 737, 7 L. R. A. 638). See, also, *Rogers v. Ramey,* 198 Ky. 138 (248 S. W. 254). The bank, through its agent Murphy, received payment more than three years before plaintiff took any action.

The Clayton County State Bank was plaintiff's agent, authorized to receive, and it did receive, payment of plaintiff's mortgage. The plaintiff was bound thereby.—*Affirmed.*

ALBERT, C. J., and EVANS, DE GRAFF, and WAGNER, JJ., concur.

FAVILLE, STEVENS, KINDIG, and GRIMM, JJ., dissent.

FAVILLE, J. (dissenting). I dissent. It is the well established rule in this state that, where the maker of a negotiable promissory note pays the same to the original payee, who is not at the time the owner of said note, and makes said payment without production and surrender of the note, he pays at his peril, unless he is able to establish that the party to whom the payment is made is the agent of the owner of the note, or that the creditor is estopped by reason of circumstances to deny such agency. We have had occasion quite recently to pass upon this question. See *Shoemaker v. Minkler*, 202 Iowa 942, and cases cited therein; *Shoemaker v. Nodland*, 202 Iowa 945; *Shoemaker v. Ragland*, 202 Iowa 947; *Carr v. Benjamin*, 207 Iowa 1139; *Ritter v. Plumb*, 203 Iowa 1001; *Iowa Sav. Bank v. Christensen*, 200 Iowa 170; *Huismann v. Althoff*, 202 Iowa 70; *Wood v. Swan*, 206 Iowa 1198.

In this case, the debtor, Fish, had no dealings whatever with the appellant. He had neither notice nor knowledge that appellant owned the note and mortgage. He had executed the instruments payable to the Clayton County State Bank. The assignment from the bank to appellant was not recorded.

The question finally resolves itself into a fact question as to whether or not, under the record, the payment by the appellee Fish to Murphy was a payment to the appellant, or an agent of the appellant. It may be conceded at this point that there is sufficient evidence in the case to warrant a conclusion that Murphy was the agent of the Clayton County State Bank, and had been held out as such by said bank; so that, had said bank been the owner of the note and mortgage in question, payment to Murphy might be held, under the record, to be a payment binding upon the Clayton County State Bank, as principal, through Murphy, as its agent. The difficulty with appellee's contention is that there is no showing whatever that Murphy was at any time or in any manner the agent of the appellant. There were no dealings whatever directly between appellant and Fish. Nor does it appear that the appellant in any manner held out the Clayton County State Bank to Fish as his agent. It does appear that Fish paid the interest on the note, from year to year, to Murphy, and that Murphy informed him that the note was held

by someone at Guttenberg. But the record fails to show that appellant had any knowledge whatever that the payments of interest were being made through Murphy. There were no dealings between Kann and Murphy. The money paid by Fish to Murphy as interest was remitted by Murphy to the Clayton County State Bank, and it gave Kann credit for the same by placing it on deposit in his account and advising him that the payment had been made. Upon this state of the record, I do not think it can properly be said that either the Clayton County State Bank or Murphy was proven to be the agent of the appellant, with authority to receive the amount of the note and mortgage held by appellant. There was no such holding out of either of said parties by the appellant as being his agent as to estop the appellant from denying said agency, or to constitute either the bank or Murphy the so-called "ostensible agent" of the appellant. At all times the appellee was in a position where he could have fully protected himself by demanding the production of the note and mortgage when he undertook to pay the same. He did not do so, and therefore, under the well established rule, it must be held that he paid at his peril, and that the appellant was not bound by the payment made to Murphy.

I am of the opinion that the decree of the trial court was erroneous, and that a decree should have been entered in favor of the appellant for the amount due on said note and for foreclosure of said mortgage. The decree appealed from should be reversed.

STEVENS, KINDIG, and GRIMM, JJ., join in this dissent.