THOMPSON YARDS, INCORPORATED, Appellant, v. HAAKINSON & BEATY COMPANY, Appellant, et al., Appellees.

No. 40048.

FEBRUARY 18, 1930.

*Clapp, Richardson, Elmquist, Briggs & McCartney* and *Pendleton & Browning,* for plaintiff, appellant.

*Marks & Marks,* for defendant, appellant.

*Stason & Knoepfler, John R. Carter, Kindig, Stewart & Hatfield, Brackney, Farr & Stockman, George H. Bliven, E. E. Baron, W. V. Steuteville,* and *Peter Balkema,* for appellees.

MORLING, C. J.—The building now known as the Strand Theatre in Sioux City has a south street frontage of about 43 feet, and a north and south depth of 100 feet. The west half of the south 50 feet, with the ground on which it stands,  is owned by defendant Elliott; the east half of the south 50 feet and ground by the defendant Cathcart. The north half of the property and ground is owned by defendants Nelson and Anderson. We infer that these portions originally were separate buildings, which were later combined into a theatre building. Each owner had leased his several property by separate and independent contract to different lessees and for different terms. There is no evidence of any joint relationship or understanding between the property owners. In 1923 and 1924, defendants Goldstein and Bergin acquired leases of the three portions of the property. Goldstein and Bergin, on June 3, 1924, made a contract with defendant Singer-Brodkey Construction Company for remodeling and reconstructing work, at a cost not to exceed $16,660. The mechanics' lien claimants furnished labor and material for this work on the order of the Singer-Brodkey Company and Goldstein and Bergin.

By Section 10270, Code, 1924, Subdivision 1:

" 'Owner' shall include every person for whose use or benefit any building, erection, or other improvement is made * * *"

Section 10271 provides:

"Every person who shall furnish any material for or perform any labor upon any building, * * * by virtue of any contract with the owner, his agent, trustee, contractor, or subcontractor shall have a lien * * *"

The question presented is whether the mechanics' lien claimants had "any contract with the owner" or his agent. No express contract with either owner is claimed, nor is it asserted in behalf of the mechanics' lien claimants that they had a contract with anyone who had an express contract of agency with any of such owners. The mechanics' lien claimants' contention is, in substance, that the holders of the leases, Goldstein and Bergin, were, by implication, the agents of the owners, and that claimants, through them, had an implied contract with the own-

ers for supplying the labor and material in controversy. The division line between the three properties was not marked or observable. In general, the work on the north 50 feet owned by defendants Nelson and Anderson "was the placing of four concrete columns and some plaster work and 14 feet of balcony." "A considerable amount of work" was done on the foundation of the north 50 feet of the east wall, the Nelson-Anderson property. The improvement of the west half of the south 50 feet, owned by defendant Elliott, consisted of a plaster partition and store front, new concrete floor, part of balcony, and remodeling a part of west wall, some plastering, patching and construction of projecting room, one half of which is on the Elliott property, and one half on the Cathcart property. Part of the west foundation wall of the Elliott property was replaced and raised. The work done on the east half of the south 50 feet, the Cathcart property, was the installing of a terra-cotta front and new canopy, marble work, concrete stairs, new concrete floor, four concrete columns, basement brick wall, two toilets, new second floor, one half the projecting booth, new plaster. The east foundation wall of the Cathcart property was patched and strengthened. A new front for the Elliott and Cathcart part of the building was constructed, by which the entrance was changed from the Elliott property to the Cathcart property, and a store installed in the Elliott property.

This description of the work is partial, but sufficiently indicates its nature for present purposes. The mechanics' lien claimants attempted to allocate by expert testimony the material furnished to the different properties. The owners, or their agents, knew of the work, but nominally were not parties to any agreement under which the work was done or material furnished. Defendant Cathcart had leased her property to Orkin Brothers by lease expiring July 1, 1926, and on November 22, 1923, Cathcart leased the property to Goldstein and Bergin for eight years, from January 1, 1926, to 1934. The lease provided:

"No alterations, additions or improvements shall be made by lessee in or upon said premises without written consent of lessor and when made by lessee the same shall not be made upon credit and lessor and said property shall in no manner be held liable for same. * * * All changes of every kind in connection

with this property shall be made at the expense of second parties, lessees, and all repairs on this property during the term of this lease, shall be made by second parties. * * * First party shall keep the roof in good repair during the term of this lease. At the expiration of this lease, the building shall revert to the owners together with all improvements made by second parties in the same condition as used by them during the term of this lease being left intact in every way. * * * It is agreed that as this property is used in connection with the Anderson property in the rear that if on January 1, 1932, the lessees are unable to renew their lease with the Andersons and are ordered to vacate, then and in that event only, this lease may be terminated by giving 30 days' notice.''

This lease is also signed by Sadoff. An agreement signed by Cathcart and Sadoff, dated July 18, 1924, subsequently to the time when the lien claimants (or some of them) began furnishing material recites that Sadoff is one of the signers of the lease; that, ''at the request of said Carrie H. Cathcart, the said N. Sadoff has and does hereby agree to furnish the sum of $10,000 to be used for the payment of labor and material in the erection and remodeling of the building upon said premises and certain adjoining property. * * * that he [Sadoff] is lessee in a written lease from Orkin Bros. for the said property. * * * and agrees to pay to the said Orkin Bros. the rental reserved in said lease and to hold harmless the said Carrie H. Cathcart from any claim on the part of the said Orkin Bros. growing out of the destruction or remodeling of the present building * * *'' 

What they are is not stated. It assigns to Sadoff the rental to become due from Orkin Bros. What it is, or what their contract is, does not appear, further than they had a lease expiring July 1, 1926, requiring any repairs to be made by them at their expense, except repairs to roof. The Sadoff agreement provided for reduction by Sadoff from the Orkin Brothers, rent during the period required for remodeling, and that none of the $10,000 should be disbursed or liable for any claims of any kind for building material or labor until the notes required to be surrendered to Sadoff were surrendered. The lease for the Elliott property, the west half of the south 50 feet, is to Goldstein and Bergin, and is merely stated in the abstract to be identical with

the Cathcart lease. The lease for the north 50 feet, the Anderson-Nelson property, is to Goldstein and Bergin from April 1, 1924, to April 1, 1934, and requires the lessees to keep the buildings in repair, and provides that:

"In the event the said parties of the first part shall decide to use the above described premises for the erection of a new building any time during the last two years of this lease, e.g., May 1, 1932, to the date of expiration then the said parties of the second part hereby agree to vacate said premises within 90 days after notice from said parties of the first part. * * *"

Defendants rely largely on the Sadoff agreement, particularly the recital that, at the request of Cathcart, Sadoff agrees to furnish $10,000 for the payment of labor and material. It is not claimed that the property owners were under any legal duty to pay for the material and labor in controversy. Quasi contract is not claimed. To the existence of an implied contract there must be a meeting of the minds,—agreement. The agreement, however, is shown by circumstances, instead of by mutually expressed intent. The difference between implied and express contract is in method of proof. 13 Corpus Juris 242.

"A contract is express when the parties show their assent in words; it is implied when they show it by acts." *Fouke & Lyon v. Jackson County,* 84 Iowa 616, 620.

"Implied contracts are such as reason and justice dictate, and which, therefore, the law presumes that every person undertakes to perform." *Ottumwa Mill & Const. Co. v. Manchester,* 139 Iowa 334, 337.

No express agency is shown. Agency may be inferred from circumstances, and it may be created by implication. *Kann v. Fish,* 209 Iowa 184; *Hart-Parr Co. v. Citizens Sav. Bank,* 199 Iowa 889. One may so conduct himself as to be estopped from denying the existence of an agency. Idem. No estoppel here is claimed. To raise an implied agency, the facts and circumstances must, in the absence of estoppel, be such as to imply an intention to create the agency. 2 Corpus Juris 437.

These lessors were not owners in common of the building. No joint interest or relationship is shown. Neither was under

obligation to improve his own property or that of the other. The leases were for comparatively long terms. The benéfits accruing to the different properties from the improvement were not necessarily of permanent value, and were not identical in character or expense. The Elliott property, for instance, was relieved of the burden of the entrance, and obtained a store room in place of it. The burden of the entrance was transferred to the Cathcart property. No mutual understanding between the property owners that the improvements were to be made at their expense, either separately or jointly, is shown. Each owner made his own contract with his tenant. Neither was under obligation to the tenant to make improvements. On the other hand, the Cathcart and Elliott leases expressly provide "that, when the improvements are made by the lessee, the same shall not be made upon credit, and lessor and said property shall in no manner be held liable to same." The lessors had the right to make such contracts, and are entitled to the benefit of them. It cannot be held that Cathcart, by reason of the Sadoff agreement, waived her rights under the contract, and there is no claim of estoppel. The case as to the Elliott and Cathcart properties is controlled by *Queal Lbr. Co. v. Lipman*, 200 Iowa 1376. Anderson and Nelson were the owners of only half of the property, and that in severalty. Their contract required the tenant to keep the building in as good repair as it was at the time of the lease, "or may at any time be placed in by the lessor." They retained the right for part of the term to use the premises for the erection of a new building. Their ground evidently was part of a larger property which fronted on another street. It is neither reasonable nor just to imply any agency on the part of the tenant of Anderson and Nelson to purchase material or procure the labor for the improvements at the expense of Anderson and Nelson or expense of their property, or to imply a contract by Anderson and Nelson to pay for such labor or material or any part of it, or subject their property to liability therefor. The claimants have not sustained the burden upon them to prove the existence of an express or implied contract with either of the property owners. *Queal Lbr. Co. v. Lipman*, 200

Iowa 1376; *Cedar Rapids S. & D. Co. v. Dubuque Realty Co.*, 195 Iowa 679.—*Affirmed.*

DE GRAFF, ALBERT, and WAGNER, JJ., concur.

STEVENS, J., concurs in result.